Gail C. Lin
RAISNER ROUPINIAN LLP
2945 Townsgate Road, Suite 200
Westlake Village, California 91361
212-221-1747 (tel & fax)
gcl@raisnerroupinian.com

Jack Raisner*
René Roupinian*
RAISNER ROUPINIAN LLP
270 Madison Avenue, Suite 1801
New York, NY 10016
jar@raisnerroupinian.com
rsr@raisnerroupinian.com

Jonathan M. Cyrluk*
Joshua S. Goldberg*
Steven C. Moeller*
Suzanne Grossman*
CARPENTER LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2105
Chicago, Illinois 60601
312-777-4300 (tel)
312-777-4839 (fax)
cyrluk@carpenterlipps.com
goldberg@carpenterlipps.com
moeller@carpenterlipps.com
grossman@carpenterlipps.com

*Pro hac vice applications forthcoming

Counsel for Plaintiff ANDREW ADELMAN

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW ADELMAN, not individually but solely as representative of the certified Class of former employees of Sungevity, Inc. and as assignee of certain claims of former officers and directors of Sungevity, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> U.S. SPECIALTY INSURANCE COMPANY, a Texas corporation, and GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation, <br><br> Defendants. | No. |

COMPLAINT

## COMPLAINT

Plaintiff Andrew Adelman ("Plaintiff"), not individually but solely in his capacity as representative of a certified class of former employees (the "Class") of Sungevity, Inc. ("Sungevity") and as assignee of certain claims of former directors and officers of Sungevity, Inc., states for his complaint against defendants U.S. Specialty Insurance Company ("U.S. Specialty") and Great American Insurance Company ("Great American," and with U.S. Specialty, "Defendants"):

I.    **Jurisdiction and venue**

1.    Jurisdiction and venue are proper in this Court. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the suit involves a controversy between parties of diverse citizenship, and the relief sought exceeds $75,000.

2.    Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

II.    **Summary of the complaint**

3.    Defendants provide D&O liability insurance to Sungevity and its directors and officers. U.S. Specialty provides $5 million in primary coverage. Great American provides $5 million in excess coverage. Sungevity is a now-defunct company that designed and sold residential solar panel systems. Plaintiff brings these claims, on behalf of the Class, as assignee to recover for an allowed priority claim in Sungevity's 2017 bankruptcy and other damages.

4.    Beginning in at least 2011, certain Sungevity directors and officers, specifically Robert R. Davenport III, Joel Dobberpuhl, Andrew Birch, Alexander Guettel, Reuben Munger,

Peter Shannon, Elizabeth K. Rushforth, and Andrew Hamer (collectively, the "Directors and Officers"), among others, knew that Sungevity was in a precarious financial position.[1]

5.      In this period, management considered and sometimes engaged in layoffs to cut costs. Management sought and obtained legal advice regarding the company's obligations concerning layoffs. Because of this advice, the Directors and Officers were aware of Sungevity's obligations under federal and state employment laws, including the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act").

6.      The WARN Act is a federal law requiring an employer to provide employees affected by a plant closure or mass layoff with 60 days' advance notice, so they may find new work. Alternatively, if the employer does not provide the required notice, the employer can pay the affected employees' wages and benefits for the 60-day period. An employer that fails to comply with the WARN Act's notice requirements does not have access to substantive defenses available under the statute. An employer that violates the WARN Act is liable for 60 days' wages and benefits, plus attorneys' fees. The California Worker Adjustment and Retraining Notification Act (the "California WARN Act"), Cal. Labor Code §1400, *et seq.*, imposes similar requirements.

7.      In January 2017, Sungevity laid off nearly 100 people from its Oakland, California headquarters. Following outside counsel's advice, obtained specifically with respect to the January layoff, the Directors and Officers decided to conduct the layoff in compliance with the WARN Act and related laws.

8.      Unfortunately, Sungevity's financial position did not improve. On March 9, 2017, Sungevity laid off approximately 330 additional employees. Despite having done a mass layoff

---

[1]      The Directors and Officers joined Sungevity at different times. All were with the company at the time of the acts that give rise to the liabilities at issue here. To simplify matters, when referring to events before 2017, Plaintiff will identify the Directors and Officers as a group, without specifying exactly which individuals were with the company at the time. The precise makeup of management at any point before 2017 does not affect Defendants' liability, because insured individuals were with Sungevity from 2011 to its bankruptcy filing, and specifically throughout the relevant period. All of the Directors and Officers had joined the company by October 2016.

COMPLAINT

months before that complied with the WARN Act, the Directors and Officers did not give the laid-off employees notice or pay those employees as required by the WARN Act and related state laws. This decision to not comply with the WARN Act exposed Sungevity to millions of dollars in liability and breached the Directors and Officers' duties of loyalty and/or care.

9.      On March 13, 2017, Sungevity initiated a chapter 11 bankruptcy proceeding captioned *In re Sunco Liquidation, Inc.*, No. 17-10561-KG (Jointly Administered) (the "Bankruptcy Case"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

10.     On behalf of himself and a putative class, Plaintiff filed an adversary proceeding in the Bankruptcy Case to recover damages for the lack of notice and non-payment of wages and benefits under the WARN Act and state employment laws, captioned *Adelman v. Sungevity, Inc.*, 17-50197-KG (Bankr. D. Del.) (the "Class Action"). Sungevity's broker notified Defendants. On April 17, 2017, U.S. Specialty denied coverage.

11.     The Class Action settled. Contingent on court approval, the parties agreed to seek certification of the Class and recognition of a priority claim of more than $3.5 million for WARN Act damages. Sungevity assigned to the Class all claims against the Directors and Officers related to the facts in the Class Action, again contingent on court approval.

12.     On June 30, 2017, Plaintiff filed a motion seeking approval of the settlement. The same day, Plaintiff notified Defendants of the settlement and of the claims against the Directors and Officers—the claims at issue here. On July 5 and 25, 2017, Defendants wrongly denied coverage. On July 18, 2017, the Bankruptcy Court certified the Class. On September 29, 2017, the Bankruptcy Court approved the settlement and dismissed the Class Action. No party appealed.

13.     On November 29, 2018, Plaintiff filed a suit captioned *Adelman v. Davenport, et al.*, No. RG18930626 (the "State Court Action"), on behalf of the Class as assignee in the Superior Court for Alameda County, California against the Directors and Officers, ultimately asserting

claims for (1) breach of the duty of loyalty, (2) breach of the duty of care, and (3) aiding and abetting breach of fiduciary duty.

14.     On January 23, 2019, the Directors and Officers again gave Defendants notice of the State Court Action. U.S. Specialty expressly denied coverage and Great American (which had denied in 2017) reserved rights.

15.     After litigating the State Court Action for a period of time, the Directors and Officers settled with Plaintiff for $4,922,510.53, which the Directors and Officers paid primarily by assigning their claims against Defendants to Plaintiff.

16.     Plaintiff brings this case on behalf of the Class as assignee. He seeks a declaration that Sungevity's damages were covered and a judgment in the amount of $5,297,510.53 (the settlement amount plus the Directors and Officers' attorney's fees in the State Court Action).

III.    **The parties and other relevant persons**

        A.      ***Plaintiff and the Class***

17.     Plaintiff Andrew Adelman is a resident of Alameda County, California. Plaintiff worked at Sungevity's location at 66 Franklin Street, Suite 310, Oakland, California, and held the position of Installation Efficiency Trainer until his termination on March 9, 2017.

18.     Plaintiff has standing to bring this claim because Sungevity assigned to the Class its right to pursue certain claims against the Directors and Officers; Plaintiff instituted the State Court Action against the Directors and Officers to pursue those claims; the Directors and Officers assigned certain claims against Defendants in settlement of the State Court Action; and Plaintiff brings this lawsuit to assert those claims on the Class's behalf against Defendants.

        B.      ***Defendants***

19.     U.S. Specialty is a Texas corporation whose principal place of business is in Houston, Texas.

20.     U.S. Specialty provided $5 million in D&O coverage to Sungevity through policy number 14-MGU-16-A37264 (the "U.S. Specialty Policy"). The original expiration date for the U.S. Specialty Policy was April 1, 2017.

21.     On March 17, 2017, Sungevity obtained an extension of the U.S. Specialty Policy such that the policy covers all events potentially at issue in this lawsuit.

22.     Great American is an Ohio corporation whose principal place of business is in Cincinnati, Ohio.

23.     Great American provided $5 million in excess D&O coverage to Sungevity through policy NMX2380761 (the "Great American Policy"). The original expiration date for the Great American Policy was April 1, 2017.

24.     On March 17, 2017, Sungevity obtained an extension of the Great American Policy such that the policy that covered the events at issue in this lawsuit.

C.      *The Directors and Officers*

25.     At all relevant times, Robert R. Davenport III ("Davenport") was the Chairman of Sungevity's Board of Directors (the "Board").

26.     In 2007, Andrew Birch ("Birch") co-founded Sungevity with Danny Kennedy. At all relevant times, he was Sungevity's CEO and a member of the Board.

27.     At all relevant times, Joel Dobberpuhl ("Dobberpuhl") was a member of the Board.

28.     At all relevant times, Alexander Guettel ("Guettel") was a member of the Board.

29.     At all relevant times, Reuben Munger ("Munger") was a member of the Board.

30.     At all relevant times, Peter Shannon ("Shannon") was a member of the Board.

31.     Beginning in October 2016 and at all relevant times thereafter, Elizabeth K. Rushforth ("Rushforth") was Sungevity's Chief Legal Officer. Rushforth also was a Senior Vice President and the Secretary of the Board.

32.     Beginning in October 2016 and at all relevant times thereafter, Andrew Hamer ("Hamer") was Sungevity's Chief Financial Officer.

IV.     **Facts common to all counts**

33.     Sungevity was founded in 2007 by environmentalist Danny Kennedy and entrepreneur Andrew Birch. It designed and sold residential solar panel systems, assisted customers with financing, and provided support services.

A.     *The events giving rise to the insured claims*

1.     **Sungevity conducted mass layoffs in 2011, 2015, and 2016 after obtaining legal advice about the WARN Act and related laws.**

34.     As far back as 2011, Sungevity struggled to retain sufficient cash for operations. From time to time, the Directors and Officers contemplated shutting down and/or laying off enough employees to trigger the WARN Act or related state laws. They obtained legal advice regarding the company's obligations on several occasions.

35.     First, in late 2011 the Directors and Officers, contemplated laying off a sufficient number of employees to potentially trigger the WARN Act. The Directors and Officers participated in regular phone calls regarding the company's cash on hand and sought out advice regarding the company's obligations under those laws if the company ran out of money.

36.     However, after counsel advised that the contemplated layoffs would trigger the WARN Act, the Directors and Officers decided to lay off only 30 employees in late 2011.

37.     Next, in or about October 2015, Sungevity continued to struggle financially and again considered laying off workers. Once again, the Directors and Officers sought legal advice, including from Sungevity's then-general counsel, Walter Conroy, regarding the company's and directors' liability under the state and federal WARN Acts and applicable employment laws. On or around October 23, 2015, Conroy made a presentation to the Board regarding these subjects.

COMPLAINT

38.    Based on this advice, the Board concluded that Sungevity could proceed with the contemplated layoffs as recommended by management.

39.    Next, in March or April 2016, Sungevity laid off 250 employees. This group largely comprised Sungevity employees supporting the company's sales out of Lowe's Companies, Inc. stores. By this time, each of the Directors and Officers had joined the company, except for Rushforth and Hamer.

40.    Because Sungevity was unsure whether the WARN Act applied to the contemplated layoffs, the company sought legal advice from outside counsel at Littler Mendelson ("Littler"). Littler advised the company that the layoffs could occur without giving notice or paying severance under the WARN Act because the employees did not work in a single location. Based on this advice, the Directors and Officers collectively decided during a telephone conference to conduct the layoff without giving notice or paying severance.

         2.    **Sungevity conducted a mass layoff in January 2017 that complied with the WARN Act and state law.**

41.    By June 2016, Sungevity again was almost broke. Sungevity attempted to merge with Easterly Acquisition Corp, but the effort failed in late 2016.

42.    Sungevity and a subsidiary named Short Hills borrowed significant sums—at least $47 million—from September to December 2016.

43.    On January 12, 2017, Sungevity laid off 91 employees at Sungevity's Oakland, California headquarters—mostly more senior, highly-compensated office workers.

44.    About three weeks earlier, on or about December 25, 2016, Rushforth and Steven Feldstein, a labor and employment attorney at Goodwin Proctor, spoke by phone about Sungevity's WARN Act liabilities. On December 25, 2016, Feldstein emailed Rushforth, explaining in detail the company's WARN Act obligations for the impending layoffs, and advising that if a company is

unable to give the requisite 60-days' notice, the company could still comply with the WARN Act and related laws by paying salary and benefits to the laid-off employees for 60 days after the layoff.

45.     About a week after Feldstein's email, on January 3, 2017, Rushforth responded, asking, "If we do a [mass layoff] next week and it turns out that we have to close our doors the first week of Feb, how would that impact our WARN and Cal-WARN obligations with regards to those employees?"

46.     In response, on January 4, 2017, Feldstein advised that Sungevity would still have to comply with its WARN Act obligations under Rushforth's proposed scenario, because there is a 30-day lookback period.

47.     On or about January 10, 2017, Rushforth spoke to Feldstein and asked him to forward cases addressing D&O liability for certain employment matters.

48.     Early on January 10, 2017, Feldstein emailed Rushforth, providing cases indicating that directors and officers may be personally liable for failing to cause their company to comply with the WARN Act.

49.     On January 10, 2017, at 8:00 AM, the Directors and Officers attended a special meeting of the Board, either in person or by phone. Draft minutes show they discussed Sungevity's financial situation and the expected mass layoff. On information and belief, this included the advice Rushforth received from Feldstein. On information and belief, the officers recommended at this meeting to conduct the impending layoff pursuant to legal advice conveyed by Rushforth, and the directors concurred and approved.

50.     On January 12, 2017, Sungevity laid off the 91 employees from its Oakland headquarters in compliance with the requirements of the WARN Act, primarily by providing written notices to the affected employees that they either were laid off but continued on payroll for 60 days or were being put on call for 60 days of continued employment.

3.   **After the January layoffs, the Directors and Officers concluded bankruptcy was inevitable and conducted a mass layoff in violation of the WARN Act and related laws.**

51.   Despite the January 2017 reduction in force, however, the Directors and Officers soon concluded that bankruptcy was inevitable, and hired advisors with respect to a potential restructuring through chapter 11 of the Bankruptcy Code, including the law firm of Morrison & Forrester ("MoFo").

52.   By early 2017, the Directors and Officers regularly attended special Board meetings in which the company's precarious financial situation and potential fixes—either by obtaining outside financing and/or conducting more layoffs—were discussed.

53.   On January 18, 2017, the Board held a special meeting. Except for Hamer and Shannon, the Directors and Officers attended in person or by phone. Draft minutes show Rushforth and MoFo attorneys "observed." According to the draft minutes, Rushforth "advised the directors on employment law matters." Upon information and belief, this included at least the legal advice Feldstein had given Rushforth about the company's WARN Act obligations weeks earlier.

54.   Throughout February 2017, the Board held special meetings at which the Directors and Officers discussed the company's worsening financial situation, and inside and outside counsel advised defendants about entering bankruptcy.

55.   On March 2, 2017, the Directors and Officers attended a special meeting of the Board. According to draft minutes, a MoFo attorney "advised the Board on its options and related process and timing, as well as Board duties." On information and belief, at or near in time to this meeting, the defendant directors and officers decided to conduct the next wave of mass layoffs on or about March 9, 2019, and to do so without taking the acts required by the WARN Act.

56.   On Friday, March 3, 2017, Rushforth sent an email to several executives, including Birch, in which she circulated a list of employees for the impending mass layoff. She stated: "[N]ote

that we will not be WARN Act noticing these employees this time around as we will filing [*sic*] a BK proceeding shortly thereafter and their WARN notice period wages will be a pre-petition administrative claim. As such, they will receive a stub payment and that will be all (no vacation will be paid-this too will be a pre-petition claim up to $12,850.) I know this is not ideal and will be a difficult message to deliver but we are a distressed company and we are where we are."

57.     Rushforth's claim was incorrect. Nothing about Sungevity's anticipated bankruptcy altered its obligations under the WARN Act—obligations of which Rushforth and the other Directors and Officers were aware.

58.     On March 9, 2017, Sungevity laid off around 330 employees—about 66% of its remaining workforce. About 260 employees were laid off from Sungevity's factory in Oakland, California (where they worked or reported), and about 70 employees were laid off from a Sungevity office in Kansas City, Missouri.

59.     Unlike the January 2017 layoffs, Sungevity did not issue WARN notices or pay the laid off employees 60-days' wages plus benefits as required by the WARN Act and the California WARN Act when an employer fails to give the requisite notice of a mass layoff.

60.     Sungevity also did not pay all earned wages to the employees by the next required payday, as required by California and Missouri labor law. Cal. Labor Code §§ 201-203; Mo. Ann. Stat. § 290.110.

B.     *The Bankruptcy Case*

1.     **A few days after the layoffs, Sungevity initiated the Bankruptcy Case and Plaintiff brought the Class Action.**

61.     On March 13, 2017, Sungevity initiated the Bankruptcy Case in the Bankruptcy Court.

62.     On March 14, 2017, Plaintiff filed the Class Action on behalf of himself and other Sungevity employees as an adversary proceeding in the Bankruptcy Case.

2.   **Sungevity provided notice of the Class Action to Defendants, and U.S. Specialty denied coverage.**

63.   On March 22, 2017, Sungevity's insurance broker, Krauter & Co. ("Krauter"), emailed notice of the Class Action to both Defendants.

64.   On March 29, 2017, Great American wrote Rushforth, acknowledging receipt of the claim and reserving all rights.

65.   On April 10, 2017, U.S. Specialty wrote Rushforth, acknowledging receipt of the claim and stating that it would investigate.

66.   On April 17, 2017, U.S. Specialty wrote Rushforth, denying coverage for the Class Action based on the so-called insured-versus-insured and employment-claim exclusions.

3.   **Plaintiff and Sungevity reached a putative settlement of the Class Action, and provided notice to Defendants, both of which denied coverage before the Bankruptcy Court approved the settlement.**

67.   Plaintiff and Sungevity reached a settlement in principle, which would come into effect on approval by the Bankruptcy Court. In sum, pursuant to the settlement, the Class would dismiss its claims and release Sungevity, and Sungevity would assign its claims against the Directors and Officers to the Class.

68.   On June 29, 2017, Plaintiff sent demand letters to the Directors and Officers, other than Rushforth.

69.   On June 30, 2017, the Plaintiff and Sungevity filed a joint motion to approve the putative settlement. The settlement would not be effective unless approved by the Bankruptcy Court.

70.   On June 30, 2017, Krauter provided the demand letter Plaintiff sent to the Directors and Officers to Defendants, giving Defendants notice well before it was effective.

71.     On July 5, 2017, Martha Hudon of Great American wrote Rushforth, acknowledging receipt of the additional materials and denying the claim, incorporating the reasons for denial set forth in the U.S. Specialty letter of April 17, 2019.

72.     On July 11, 2017, U.S. Specialty wrote Rushforth, acknowledging receipt of the additional materials providing notice of the putative settlement sent on June 30, and stating that it would investigate and respond later.

73.     On July 17, 2017, Great American wrote Krauter, again acknowledging receipt of the additional materials providing notice of the putative settlement sent on June 30, and referring Krauter back to the July 5 denial letter.

74.     On July 18, 2017, the Bankruptcy court certified the Class for settlement purposes, defining the class as "all former employees of [Sungevity] who were terminated on or about March 9, 2017, and within 90 days prior to that date, as a consequence of mass layoffs or plant closings, who did not receive 60 days' advance notice of such termination, and/or who did not receive payment of their accrued unused vacation."

75.     On July 25, 2017, counsel representing U.S. Specialty wrote Rushforth, denying the claim. In sum, the denial was based on: (1) an argument that the claim presented by the June 29 demand letter was the same claim as the Class Action, which U.S. Specialty had denied in April; (2) an employment-claims exclusion that excluded any claims arising from the WARN Act and similar laws; and (3) the so-called insured-versus-insured exclusion, because the Directors and Officers are insureds. These arguments are wrong.[2]

76.     On September 29, 2017, the Bankruptcy court approved the settlement of the Class Action. As part of the settlement, the Bankruptcy court allowed a wage priority claim against

---

[2]     The foregoing is meant simply to provide Defendants with notice of the issues. It is not an exhaustive discussion of the coverage dispute. Plaintiff does not concede that any of the purported reasons for denial are legitimate by reciting them.

Sungevity's estate for back pay, benefits, and unpaid accrued vacation in the amount of $3,593,130. In addition, Sungevity assigned its right to pursue claims against Defendants to the Class.

77.     Defendants did not cover the claim, intervene in the Class Action, cover the defense, or file a declaratory judgment action before the Bankruptcy Court approved the settlement.

C.      ***Plaintiff brought the assigned claims against the Directors and Officers, and (in a settlement) the Directors and Officers assigned their claims against Defendants to Plaintiff.***

78.     On November 29, 2018, Plaintiff filed the State Court Action.

79.     On January 23, 2019, the Directors and Officers notified U.S. Specialty of the State Court Action.

80.     On January 25, 2018, the Directors and Officers notified Great American of the State Court Action.

81.     On February 14, 2019, U.S. Specialty wrote the Directors and Officers, denying coverage for the State Court Action. The denial letter asserted the same arguments as the July 25, 2017 letter, with the additional argument that none of Plaintiff's claimed damages constitutes a "loss" under the policy.

82.     On February 15, 2019, Great American (which had denied the claim in 2017) wrote the Directors and Officers, acknowledging receipt of information related to the State Court Action, but otherwise reserving rights.

83.     Representatives of the Directors and Officers and U.S. Specialty then discussed coverage issues. On March 12, 2019, U.S. Specialty's counsel provided additional reasons why, in its view, the claim was not covered. U.S. Specialty incorrectly claimed that Plaintiff's damages were impermissibly "restitutionary."

84.     On June 10, 2019, the Directors and Officers wrote U.S. Specialty, setting forth reasons why the D&O lawsuit is covered.

85.     Plaintiff and the Directors and Officers continued to litigate the State Court Action for some time. Eventually, they reached a settlement, under which the Directors and Officers agreed they were legally obligated to pay $4,922,510.53, which they paid primarily by assigning their coverage claims against Defendants to Plaintiff.

86.     On June 30, 2020, the court in the State Court Action dismissed the State Court Action by stipulation.

D.     ***This lawsuit***

87.     Plaintiff brings this case on behalf of the Class as assignee of the Directors and Officers. He seeks a declaration that Sungevity's damages were covered by Defendants' policies and a judgment in the amount of $5,297,510.53 (the settlement amount representing the Class's total damages plus the Directors and Officers' attorney's fees in the State Court Action).

**Count I (against U.S. Specialty)**
**Declaratory judgment regarding coverage**

88.     To the extent necessary to support the allegations in this count, Plaintiff realleges and incorporates by reference all of the foregoing allegations, inclusive, as if fully set forth herein.

89.     The U.S. Specialty Policy is a valid and enforceable contract.

90.     The U.S. Specialty Policy covered the claims against the Directors and Officers.

91.     There is an actual case or controversy between Plaintiff and U.S. Specialty with respect to whether the claims against the Directors and Officers are covered under the U.S. Specialty Policy, which the Court can redress by a declaration.

WHEREFORE, Plaintiff respectfully requests that the Court: (1) enter a declaratory judgment in his favor and against U.S. Specialty on Count I, declaring that: (A) the U.S. Specialty Policy covers the claims against the Directors and Officers in the State Court Action, and no exclusion from coverage applies; and (B) U.S. Specialty is liable for the full amount of settlement between Plaintiff as assignee and the Directors and Officers, plus costs and attorney's fees in an

amount to be determined at trial; and (2) grant such other and further relief as the Court deems just and proper.

## Count II (against Great American)
### Declaratory judgment regarding coverage

92.     To the extent necessary to support the allegations in this count, Plaintiff realleges and incorporates by reference all of the foregoing allegations, inclusive, as if fully set forth herein.

93.     The Great American Policy is a valid and enforceable contract.

94.     The Great American Policy covered the claims against the Directors and Officers.

95.     There is an actual case or controversy between Plaintiff and Great American with respect to whether the claims against the Directors and Officers are covered under the Great American Policy, which the Court can redress by a declaration.

WHEREFORE, Plaintiff respectfully requests that the Court: (1) enter a declaratory judgment in his favor and against Great American on Count II, declaring that: (A) the Great American Policy covers the claims against the Directors and Officers in the State Court Action, and no exclusion from coverage applies; and (B) Great American is liable for the full amount of settlement between Plaintiff as assignee and the Directors and Officers, plus costs and attorney's fees in an amount to be determined at trial; and (2) grant such other and further relief as the Court deems just and proper.

## Count III (against U.S. Specialty)
### Breach of contract

96.     To the extent necessary to support the allegations in this count, Plaintiff realleges and incorporates by reference all of the foregoing allegations, inclusive, as if fully set forth herein.

97.     The U.S. Specialty Policy is a valid and enforceable contract.

98.     The U.S. Specialty Policy covered both Sungevity's damages and the claims against the Directors and Officers.

99.     The U.S. Specialty Policy required Defendants to cover the claims asserted in the State Court Action.

100.    The Directors and Officers provided valid notice of all claims to U.S. Specialty.

101.    However, U.S. Specialty wrongly denied coverage.

102.    The denial was a breach of the U.S. Specialty Policy.

103.    Plaintiff is an assignee of the Directors and Officers' claims against U.S. Specialty.

WHEREFORE, Plaintiff respectfully requests that the Court:  (1) enter a judgment against U.S. Specialty for the damages of $5,297,510.53 up to the amount of coverage; and (2) grant such other and further relief as the Court deems just and proper.

**Count IV (against Great American)**
**Breach of contract**

104.    To the extent necessary to support the allegations in this count, Plaintiff realleges and incorporates by reference all of the foregoing allegations, inclusive, as if fully set forth herein.

105.    The Great American Policy is a valid and enforceable contract.

106.    The Great American Policy covered both Sungevity's damages and the claims against the Directors and Officers.

107.    The Great American Policy required Great American to cover the claims asserted in the State Court Action.

108.    The Directors and Officers provided valid notice of all claims to Great American.

109.    However, Great American wrongly denied coverage.

110.    Great American breached the Great American Policy.

111.    Plaintiff is an assignee of the Directors and Officers' claims against Great American.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WHEREFORE, Plaintiff respectfully requests that the Court:  (1) enter a judgment against Great American for the damages of $5,297,510.53 up to the amount of coverage; and (2) grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable.

Dated: April 16, 2021

ANDREW ADELMAN, not individually but solely as representative of the certified Class of former employees of Sungevity, Inc. and as assignee of certain claims of former officers and directors of Sungevity, Inc.

By:  *Gail Lin*

Gail C. Lin
RAISNER ROUPINIAN LLP
2945 Townsgate Road, Suite 200
Westlake Village, California 91361
212-221-1747 (tel & fax)
gcl@raisnerroupinian.com

Jack Raisner*
René Roupinian*
RAISNER ROUPINIAN LLP
270 Madison Avenue, Suite 1801
New York, NY 10016
jar@raisnerroupinian.com
rsr@raisnerroupinian.com

Jonathan M. Cyrluk*
Joshua S. Goldberg*
Steven C. Moeller*
Suzanne Grossman*
CARPENTER LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2105
Chicago, Illinois 60601
312-777-4300 (tel)
312-777-4839 (fax)
cyrluk@carpenterlipps.com
goldberg@carpenterlipps.com
moeller@carpenterlipps.com
grossman@carpenterlipps.com

*Pro hac vice applications forthcoming*

COMPLAINT