**HCC**

HCC Global
8 Forest Park Drive, Farmington, Connecticut 06032
main 860 674 1900   facsimile 860 676 1737

# HR CARE® *The Essential Online HR Resource*

**HR Care®** gives our insureds the core resources needed to keep up with employment law issues.

Please use the following instructions to get started by logging in using a **temporary log in name and password**.  Log into HR Care® at http://www.hrcare.com/.

When the screen below appears, under user name enter **hccglobal** and under password enter **05insured**. Click on **accept terms**.  Follow directions below to create your own log in and password.



The HCC HR Care® website will open.  Click on Registration for HCC Global Insureds and follow instructions to set up your own log in credentials and password.



**EXHIBIT 1**

**What can HR Care® do for you?**
- Increase the perceived and real value of being your customer.
- Provide valuable HR information for your customers - small & large.

**Why should you be interested in HR Care®?**
- Because you sell to human resource professionals (or any persons filling that function), HR Care® is used to provide those human resource professionals the information they need to stay abreast of employment law.
- HR Care® is comprehensive, easy-to-use, and accessible via any computer with an Internet connection.
- All businesses and managers need to stay informed about the constantly changing employment law environment.

**What content does HR Care® provide?**
HR Care® provides a wealth of employment law information.  In addition, HR Care® e-mails updates to clients/insureds on a monthly basis.

**The HR Care® Online Resource Center includes:**

**HR CARE® REFERENCE AREA**
- **HR Care® Legal Guide - U.S.**  The Legal Guide is 40 easy to read chapters for HR from hiring to firing, includes checklists and sample forms, and can be searched by key word.
- **U.S. Legal System & Terminology.**  Helps you understand the U.S. legal system and terminology used in the HR Care® publications and resource center. Valuable background for both new and experienced HR professionals.
- **Employee Handbook/Policies.**  Information on how to create an employee handbook with sample forms and policies.
- **Posters/Forms.**  Downloadable government posters and forms for use by businesses.
- **Religious Practices Guide.**  Easy-to-read coverage of the world's major   religions, their history, beliefs and practices and holidays.
- **HR Vulnerability Self-Audit.**  Use this self-audit from Jackson Lewis to review and analyze your company's personnel practices. Comprehensive and easy-to-use!
- **Compensation Tools.**  This area includes a salary wizard which computes salaries based on job title and geographic location, a cost of living/salary calculator, and a wage and hour exemption calculator.

**HR CARE® NEWS AREA**
- **HR Care® Newswire.** Daily news in Employment Law, Labor, EEO, Immigration, Benefits and Safety!
- **HR Care® Outlook.** This newsletter has been published bimonthly since 1995, and updates HR on the latest issues.
- **Monthly Comment from Jackson Lewis.** The labor law experts from Jackson Lewis provide you with a monthly commentary on important HR issues.

**HR CARE® FORUM**
- **HR Discussion Group.** Ask your peers questions about the workplace issues that affect your company - and read their responses!

**GOVERNMENT REFERENCE**
- **Government Links for HR.**  In this area you can access the important government web sites for HR.
- **Search Federal Decisions.**  You can search and find full text decisions read in the HR Care® publications.
- **Federal/State Laws.**  In here you can find state and federal statutes and regulations.

For more information:       Curtis Communications, Inc.
                            1200 Valley West Drive, Suite 309-04
                            West Des Moines, IA 50266
                            Voice: 877-376-6158   Fax: 515-864-0200
                            Email: curtiscom@hrcare.com

**EXHIBIT 1**

# U.S. SPECIALTY INSURANCE COMPANY
## Houston, Texas

**NOTICE: THIS IS A CLAIMS MADE POLICY WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF APPLICABLE, THE DISCOVERY PERIOD.  THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF DEFENSE COSTS.  DEFENSE COSTS WILL BE APPLIED AGAINST THE RETENTION.  THE INSURER HAS NO DUTY UNDER THE POLICY TO DEFEND ANY INSURED.**

## DECLARATIONS

### DIRECTORS, OFFICERS AND ORGANIZATION LIABILITY INSURANCE POLICY

POLICY NUMBER:  14-MGU-16-A37264                    RENEWAL OF:  14-MGU-15-A34372

ITEM 1.   **NAMED ORGANIZATION:**   Sungevity, Inc.
                                    66 Franklin Street, Suite 310
                                    Oakland, CA  94607

ITEM 2.   **POLICY PERIOD:**
          (a)   Inception Date:  4/1/2016
          (b)   Expiration Date: 4/1/2017
          at 12:01 a.m. at the Principal Address stated in Item 1.

ITEM 3.   **LIMIT OF LIABILITY** (inclusive of **Defense Costs**):
          $5,000,000 maximum aggregate limit of liability for all Insuring Agreements combined.

ITEM 4.   **RETENTION**: $150,000
          (Provided, the retention is $0, per **Claim**, for **Loss** under INSURING AGREEMENT A as to which indemnification by the **Insured Organization** is not legally permissible.)

ITEM 5.   **PREMIUM**: $50,541.00

ITEM 6.   **DISCOVERY PERIOD**:
          One or two years after the end of the **Policy Period**, at the election of the **Named Organization**.

ITEM 7.   **ADDITIONAL PREMIUM FOR DISCOVERY PERIOD:**
          (a) one-year Discovery Period:   100% of the annual Premium.
          (b) two-year Discovery Period:   200% of the annual Premium.

ITEM 8.   **NOTICES REQUIRED TO BE GIVEN TO THE INSURER MUST BE ADDRESSED TO:**

| Street Address: | Facsimile Number: | E-mail Address: |
|---|---|---|
| HCC Global Financial Products, LLC | (860) 676-1737 | usclaims@hccglobal.com |
| 8 Forest Park Drive | | |
| Farmington, CT  06032 | | |
| Attn:  Claims Manager | | |

ITEM 9.   **ENDORSEMENTS ATTACHED AT ISSUANCE:**
          1055-212  1055-300  1055-303  1055-312  1055-314  1055-320  1055-325  1055-327  1055-329
          1055-333  1055-342  1055-369  1055-413  1055-431  1055-475  1055-476  1055-479  1055-481
          1055-483  1055-503  1055-602  1055-708  1055-711  1055-713  1055-727  1055-730  1055-745
          1055-802  1055-803  1055-810  1055-815  1055-826  1055-896  1055-4014  1055-4037  1055-4038
          1055-4054  1055-8042  80016

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed on the Declarations Page by its President, a Secretary and a duly authorized representative of the Insurer.

Secretary                    President                    Authorized Representative

Date: April 15, 2016                                      USSIC 1056 (04/2002)

**EXHIBIT 1**

# U.S. SPECIALTY INSURANCE COMPANY

# THE MAG

Directors, Officers and
Organization Liability Insurance
Policy

 HCC

HCC Global
8 Forest Park Drive, Farmington, Connecticut 06032
main 860 674 1900   facsimile 860 676 1737

**EXHIBIT 1**

U.S. SPECIALTY INSURANCE COMPANY

# U.S. SPECIALTY INSURANCE COMPANY

## THE MAG

DIRECTORS, OFFICERS AND PRIVATE ORGANIZATION LIABILITY
INSURANCE POLICY

**This is a claims made policy. Please read it carefully.**

In consideration of the payment of the premium, and in reliance upon the statements made in the **Application**, including attachments, all of which are made a part hereof and deemed attached hereto, and subject to the Declarations and the limitations, conditions, provisions, any endorsements to and all other terms of this policy, the Insurer and the **Insureds** agree as follows:

INSURING AGREEMENTS

(A)   The Insurer will pay to or on behalf of the **Insured Persons Loss** arising from **Claims** first made against them during the **Policy Period** or Discovery Period (if applicable) for **Wrongful Acts.**

(B)   The Insurer will pay to or on behalf of the **Insured Organization Loss** arising from **Claims** first made against it during the **Policy Period** or Discovery Period (if applicable) for **Wrongful Acts.**

DEFINITIONS

(A)   **Application** means the application attached to and forming part of this Policy, including any materials submitted in connection with such application, all of which are deemed a part of the Policy.

(B)   **Claim** means:

    (1)   any oral or written demand, including any demand for non-monetary relief,

    (2)   any civil proceeding commenced by service of a complaint or similar pleading,

    (3)   any arbitration, mediation or other similar dispute resolution proceeding,

    (4)   any administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

    (5)   any criminal proceeding commenced by the return of an indictment, or

**EXHIBIT 1**

U.S. SPECIALTY INSURANCE COMPANY

    (6)     any appeal from any proceeding referred to in this DEFINITION (B).

(C)    **Defense Costs** means reasonable legal fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond) resulting from the investigation, adjustment, defense or appeal of a **Claim** against an **Insured**, but excluding salaries, wages, benefits or overhead expenses of any **Insured Person**.

(D)    **Discrimination** means:

    (1)     any failure or refusal to hire, failure or refusal to promote, demotion or discharge of, or wrongful failure to grant tenure to, any person, or

    (2)     any limitation, segregation or classification of any **Employee** or applicant for employment in any way that would deprive or tend to deprive any person of employment opportunities or otherwise adversely affect his or her status as an **Employee**;

because of such person's race, color, age, sex, disability, pregnancy, sexual orientation or preference, national origin, religion, or other status that is protected pursuant to any applicable federal, state or local statute or ordinance.

(E)    **Employee** means any individual whom the **Insured Organization** compensates by salary, wages and/or commissions and whose labor or service is engaged by and directed by the **Insured Organization**, including seasonal, volunteer and part-time employees.

(F)    **Employment Practices Wrongful Act** means any actual or alleged:

    (1)     **Discrimination,**

    (2)     **Retaliation,**

    (3)     **Sexual Harassment,**

    (4)     **Workplace Harassment,**

    (5)     **Workplace Tort,**

    (6)     **Wrongful Termination,** or

    (7)     Violation of the Family and Medical Leave Act.

(G)    **Insured** means the **Insured Persons** and the **Insured Organization**.

U.S. SPECIALTY INSURANCE COMPANY

(H)   **Insured Organization** means the **Named Organization** and any **Subsidiary** thereof.

(I)    **Insured Person** means any past, present or future director, officer, managing member, manager or **Employee** of the **Insured Organization**, including any person in a position which is the functional equivalent thereof with respect to any entity included within the definition of **Insured Organization** located outside the United States.

(J)    **Loss** means **Defense Costs** and any damages, settlements, judgments, back pay awards and front pay awards or other amounts (including punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable by law) that an **Insured** is legally obligated to pay as a result of any **Claim**; provided, that **Loss** will not include (1) wages, fines, taxes or penalties or matters which are uninsurable under the law pursuant to which this Policy is construed; (2) severance pay or other amounts pursuant to an express contract of employment or an express obligation to make such payments in the event of termination of employment, including but not limited to payments for stock option or stock appreciation rights; or (3) the payment of any insurance plan benefits.  For purposes of determining whether punitive or exemplary damages or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the Insurer agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insureds** in that regard.

(K)   **Named Organization** means the entity designated as such in Item 1 of the Declarations.

(L)    **Outside Capacity** means service by an **Insured Person** as a director, officer, member, manager or trustee of, or in another equivalent executive position with respect to, an **Outside Entity**, during such time that such service is at the request of the **Insured Organization**.

(M)   **Outside Entity** means any corporation or organization other than the **Insured Organization** which is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code of 1986, as the same may be amended from time to time.

(N)   **Policy Period** means the period set forth in Item 2 of the Declarations, subject to prior termination or cancellation pursuant to CONDITION (E).

(O)   **Pollutants** means any seepage, pollution or contamination, including but not limited to any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, and materials to be recycled, reconditioned or reclaimed.

**EXHIBIT 1**

U.S. SPECIALTY INSURANCE COMPANY

(P)     **Retaliation** means retaliatory treatment against an **Employee** of the **Insured Organization** on account of such **Employee's** exercise or attempted exercise of his or her rights under law.

(Q)     **Sexual Harassment** means unwelcome sexual advances, requests for sexual favors, or other verbal, visual or physical conduct of a sexual nature that is made a condition of employment with the **Insured Organization**, is used as a basis for employment decisions by the **Insured Organization**, creates a work environment with the **Insured Organization** that interferes with performance, or creates an intimidating, hostile or offensive working environment.

(R)     **Subsidiary** means any entity:

   (1)     during any time on or before the inception of the **Policy Period** in which the **Named Organization** has or controls, either directly or indirectly through one or more **Subsidiaries**, the right to elect, appoint or designate more than fifty percent (50%) of such entity's directors or managers; or

   (2)     subject to CONDITION (F)(3), created or acquired during the **Policy Period** during any time in which, as a result of such creation or acquisition, the **Named Organization** has or controls, either directly or indirectly through one or more **Subsidiaries**, the right to elect, appoint or designate more than fifty percent (50%) of such entity's directors or managers.

An entity ceases to be a **Subsidiary** when the **Named Organization** no longer has or controls, either directly or indirectly through one or more **Subsidiaries**, the right to elect, appoint or designate more than fifty percent (50%) of such entity's directors or managers.  The coverage afforded under this Policy with respect to **Claims** against a **Subsidiary** or any **Insured Person** thereof will apply only in respect of **Wrongful Acts** committed or allegedly committed after the effective time that such entity becomes a **Subsidiary** and prior to the time that such entity ceases to be a **Subsidiary**.

(S)     **Workplace Harassment** means conduct which creates a work environment with the **Insured Organization** that interferes with performance, or creates an intimidating, hostile or offensive working environment.

(T)     **Workplace Tort** means misrepresentation, defamation (including libel and slander), invasion of privacy, false imprisonment, negligent evaluation, negligent training or supervision, wrongful discipline or wrongful deprivation of career opportunity, if actually or allegedly related to the claimant's employment by the **Insured Organization**.

**EXHIBIT 1**

U.S. SPECIALTY INSURANCE COMPANY

(U)  **Wrongful Act** means:

    (1)  any **Employment Practices Wrongful Act** (a) by the **Insured Organization**, or (b) by an **Insured Person** in his or her capacity as a director, officer, member, manager or **Employee** of the **Insured Organization**;

    (2)  any other actual or alleged act, error, misstatement, misleading statement, omission or breach of duty (a) by the **Insured Organization**, or (b) by an **Insured Person** in his or her capacity as a director, officer, member, manager or **Employee** of the **Insured Organization** or in an **Outside Capacity**; or

    (3)  any matter claimed against an **Insured Person** solely by reason of his or her service (a) as a director, officer, member, manager or **Employee** of the **Insured Organization**, or (b) in an **Outside Capacity**.

(V)  **Wrongful Termination** means actual or constructive termination of the employment of, or demotion of, or failure or refusal to promote, any **Employee**, which is in violation of law, against public policy or in breach of an implied agreement to continue employment.

EXCLUSIONS

Unless otherwise specifically stated or provided for in CONDITION (D)(2) or elsewhere in this Policy, the Insurer will not be liable to make any payment of **Loss** in connection with a **Claim**:

(A)  arising out of, based upon or attributable to the gaining by any **Insured** of any profit or advantage to which such **Insured** was not legally entitled; provided, that this EXCLUSION (A) will apply to an **Insured** only if there has been a final adjudication adverse to such **Insured** establishing that the **Insured** gained such a profit or advantage;

(B)  arising out of, based upon or attributable to the commission by any **Insured** of any criminal or deliberately fraudulent or dishonest act; provided, that this EXCLUSION (B) will apply to an **Insured** only if there has been a final adjudication adverse to such **Insured** establishing that the **Insured** so acted;

(C)  for any actual or alleged:

    (1)  bodily injury, sickness, disease or death of any person or damage to or destruction of any tangible property, including the loss of use thereof; or

**EXHIBIT 1**

U.S. SPECIALTY INSURANCE COMPANY

    (2)      mental anguish, emotional distress, libel, slander, defamation or disparagement or violation of a person's right of privacy; provided, that this EXCLUSION (C)(2) will not apply to any **Claim** for an **Employment Practices Wrongful Act**;

(D)    for the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants** or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**;

(E)    for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 or any regulations promulgated thereunder or of any similar law or regulations or any other actual or alleged **Wrongful Act** in the administration of employee benefits;

(F)    brought by or on behalf of, or in the name or right of, the **Insured Organization**, whether directly or derivatively, or any **Insured Person**, unless such **Claim** is:

    (1)      brought and maintained independently of, and without the solicitation, assistance or active participation of, the **Insured Organization** or any **Insured Person**,

    (2)      brought or maintained by an **Insured Person** for contribution or indemnity and directly results from another **Claim** covered under this Policy, or

    (3)      for an actual or alleged **Employment Practices Wrongful Act**;

(G)    by or on behalf of, or in the name or right of, any **Outside Entity**, whether directly or derivatively, against an **Insured Person** for a **Wrongful Act** in his or her **Outside Capacity** with respect to such **Outside Entity**, unless such **Claim** is brought and maintained independently of, and without the solicitation, assistance or active participation of, the **Outside Entity**, the **Insured Organization** or any **Insured Person**;

(H)    arising out of, based upon or attributable to facts or circumstances alleged, or to the same or related **Wrongful Acts** alleged or contained, in any claim which has been reported, or with respect to which any notice has been given, under any policy of which this Policy is a renewal or replacement or which it may succeed in time;

(I)    arising out of, based upon or attributable to any pending or prior litigation as of the inception date of this Policy, or alleging or derived from the same or

**U.S. SPECIALTY INSURANCE COMPANY**

essentially the same facts or circumstances as alleged in such pending or prior litigation;

(J)    to the extent any portion of such **Claim** seeks relief or redress in any form other than money damages, provided that this EXCLUSION (J) will not apply to **Defense Costs** incurred in connection with any such **Claim**;

(K)    brought about or contributed to by any willful violation of any law, statute, rule or regulation by any **Insured**; provided, that this EXCLUSION (K) will not apply to any **Claim** for an **Employment Practices Wrongful Act**;

(L)    for any actual or alleged violation of any provision of the Fair Labor Standards Act other than the Equal Pay Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, any workers' compensation, unemployment insurance, social security or disability benefits law or any amendments thereto, or any other similar provisions of any federal, state or local statutory or common law or any rules and regulations promulgated under any of the foregoing; provided, that this EXCLUSION (L) shall not apply to any **Claim** for any actual or alleged **Retaliation**;

(M)    for the actual, alleged or threatened discharge, dispersal, release or escape of nuclear reaction, nuclear radiation, radioactive contamination or any radioactive substance;

(N)    for any actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, any state "blue sky" law, any rule or regulation promulgated under any of the foregoing, or any other provision of federal, state or common law imposing liability in connection with the registration, offer, sale or purchase of securities; provided, that this EXCLUSION (N) shall not apply to any **Claim** arising out of the offering, sale or purchase of securities, whether debt or equity, that are exempt from registration under the Securities Act of 1933; and provided, further, that if at least thirty (30) days prior to any initial public offering of stock of the **Named Organization** or any **Subsidiary** or any purchase or sale, or any offer to purchase or sell, any debt securities of the **Named Organization** or any **Subsidiary**, the **Insured Organization** gives the Insurer written notice thereof together with any information with respect thereto as the Insurer may request, the Insurer will offer a proposal to provide coverage with respect to such event, subject to such additional terms, conditions and limitations of coverage and such additional premium as the Insurer may require;

(O)    for any actual or alleged:

        (1)    infringement of any patent, copyright or trademark, or

U.S. SPECIALTY INSURANCE COMPANY

(2)     unauthorized taking or use of any trade name, service mark, service name, mask work, title, slogan, trade secret, know-how or confidential or proprietary business information or other material or information in violation of any right under any patent, copyright or trademark registration, license, lease, franchise, permit, authorization or agreement (including secrecy and non-disclosure agreements);

including any actual or alleged violation of any law, statute, rule or regulation or any provision of the common law imposing liability in connection therewith; provided, that this EXCLUSION (O) will apply only to **Claims** against the **Insured Organization**; or

(P)     for any actual or alleged breach of contract or agreement; provided that this EXCLUSION (P) will not apply to any **Claim** for an **Employment Practices Wrongful Act**.

No conduct of any **Insured** will be imputed to any other **Insured** to determine the application of any of the above EXCLUSIONS.

DISCOVERY PERIOD

If the Insurer or the **Named Organization** fails or refuses to renew this Policy or if the **Named Organization** cancels this Policy, any **Insured** will have the right, upon payment of the respective Discovery Period Premium set forth in Item 7 of the Declarations, to an extension of the coverage granted by this Policy for the period set forth in Item 6 of the Declarations following the effective date of such cancellation or non-renewal (the "Discovery Period"), but only with respect to any **Wrongful Act** actually or allegedly taking place before the date of such cancellation or non-renewal. A written request for this extension, together with payment of the Discovery Period Premium, must be made within thirty (30) days after the effective date of cancellation or non-renewal of the Policy. Such Discovery Period Premium will be deemed to be fully earned as of the inception of the Discovery Period. This clause and the right contained within will not apply if this Policy is terminated by the Insurer for failure to pay any premium when due.

EXTENSIONS

(A)     Subject to its terms and conditions, this Policy will afford coverage for **Claims** for **Wrongful Acts** of an **Insured Person** if such **Claims** are made against the estates, heirs, legal representatives or assigns of an **Insured Person** who is deceased or against the legal representatives or assigns of an **Insured Person** who is incompetent, insolvent or bankrupt, to the extent that such **Claims** would have been covered by this Policy in the absence of such death, incompetence, insolvency or bankruptcy.

**EXHIBIT 1**

U.S. SPECIALTY INSURANCE COMPANY

(B)    Subject to its terms and conditions, this Policy will afford coverage for **Claims** for **Wrongful Acts** of an **Insured Person** if such **Claims** are made against the **Insured Person's** lawful spouse solely by reason of such spouse's legal status as a spouse of the **Insured Person** or such spouse's ownership interest in property which the claimant seeks as recovery for alleged **Wrongful Acts** of the **Insured Persons**.  For purposes of the Policy, amounts which such spouse becomes legally obligated to pay by reason of such **Claim** will be treated as **Loss** which the **Insured Person** is legally obligated to pay on account of the claim made against the **Insured Person**.  This coverage extension does not apply, however, to the extent the **Claim** alleges any wrongful act or omission by the **Insured Person's** spouse.

## CONDITIONS

(A)    <u>Limit of Liability and Retention</u>

    (1)    The Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period** will not exceed the Limit of Liability set forth in Item 3 of the Declarations.

    (2)    **Defense Costs** will be part of and not in addition to the Limit of Liability, and payment of **Defense Costs** will reduce the Limit of Liability.  **Defense Costs**, as incurred, will also be applied against the retention.

    (3)    The retention stated in Item 4 of the Declarations will apply to **Loss**, including **Defense Costs**:

        (a)    which the **Insured Organization** is obligated to pay as a result of **Claims** against it, or

        (b)    which the **Insured Organization** is required or permitted to pay as indemnification or advancement to or on behalf of the **Insured Persons** as a result of **Claims** against them, whether or not such **Loss** is actually paid, unless the **Insured Organization** is unable to pay such **Loss** as indemnification or advancement solely by reason of its financial insolvency.

    For purposes of this CONDITION (A)(3), the certificate of incorporation, charter, articles of association or other organizational documents of the **Named Organization** and each **Subsidiary**, including the bylaws and resolutions thereof, will be deemed to have been adopted or amended to provide indemnification and advancement to the **Insured Persons** to the fullest extent permitted by law.

**EXHIBIT 1**

U.S. SPECIALTY INSURANCE COMPANY

(4)     The Insurer will be liable only for the amount of **Loss** in connection with any **Claim** which is in excess of the retention stated in Item 4 of the Declarations, if applicable.  Such retention is to be borne by the **Insureds** and remain uninsured.  A single retention will apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

(5)     One retention amount will apply to the covered portion of each and every single **Claim**.

(B)     <u>Notice of **Claims** and Reporting Provisions</u>

(1)     The **Insureds** must, as a condition precedent to the obligations of the Insurer under this Policy, give written notice, including full details, to the Insurer of any **Claim** as soon as practicable after it is made.

(2)     If written notice of a **Claim** has been given to the Insurer pursuant to CONDITION (B)(1) above, then any **Claim** subsequently made against the **Insureds** and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** of which such notice has been given, or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in the **Claim** of which such notice has been given, will be considered to have been made at the time such notice was given.

(3)     If, during the **Policy Period** or the Discovery Period (if applicable), the **Insureds** become aware of any circumstances which may reasonably be expected to give rise to a **Claim** against the **Insureds** and if, before the end of the **Policy Period** or the Discovery Period (if applicable), the **Insureds** give written notice to the Insurer of the circumstances and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, potential claimants and the consequences which have resulted or may result from such **Wrongful Act**, then any **Claim** subsequently made against the **Insureds** and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** described in such notice will be considered to have been made at the time such notice of circumstances was given.

(4)     All notices under this CONDITION (B) must refer to the Policy Number, must be in writing, must request coverage under this Policy, and must be given by certified mail or prepaid express courier to the address set forth in Item 8 of the Declarations.

**EXHIBIT 1**

U.S. SPECIALTY INSURANCE COMPANY

(C)     Interrelationship of **Claims**

All **Claims** alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events or to a series of related facts, circumstances, situations, transactions or events will be considered to be a single **Claim** and will be considered to have been made at the time the earliest such **Claim** was made.

(D)     **Defense Costs**, Settlements, Allocation

(1)     The Insurer will have no duty under this Policy to defend any **Claim**. The **Insureds** must defend any **Claim** against them. The **Insureds** may not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the Insurer's prior written consent, which consent may not be unreasonably withheld. Only those settlements, stipulated judgments and **Defense Costs** to which the Insurer has consented will be recoverable as **Loss** under the Policy. The Insurer will be entitled to effectively associate in the defense and the negotiation of any settlement of any **Claim**.

(2)     The Insurer will pay covered **Defense Costs** on an as-incurred basis. If it is finally determined that any **Defense Costs** paid by the Insurer are not covered under this Policy, the **Insureds** agree to repay such non-covered **Defense Costs** to the Insurer.

(3)     If **Loss** covered by this Policy and loss not covered by this Policy are both incurred in connection with a single **Claim**, either because the **Claim** includes both covered and uncovered matters, or because the **Claim** is made both against **Insureds** and against others not included within the definition of **Insured**, the **Insureds** and the Insurer agree to use their best efforts to determine a fair and proper allocation of all such amounts, taking into account the relative legal and financial exposures of the parties to the **Claim** and the relative benefits to be obtained by the resolution of the **Claim**. The Insurer will be obligated to pay only those amounts and portions of **Loss** allocated to covered matters claimed against **Insureds**. If the **Insureds** and the Insurer are unable to agree upon an allocation, then until a final allocation is agreed upon or determined pursuant to the provisions of this Policy and applicable law, the Insurer will be obligated to make an interim payment of that amount or portion of **Loss**, including **Defense Costs**, which the parties agree is not in dispute.

U.S. SPECIALTY INSURANCE COMPANY

  (4) The Insurer will have no obligation to pay **Loss**, including **Defense Costs**, after the Insurer's maximum aggregate limit of liability, as set forth in Item 3 of the Declarations, has been exhausted by the payment of **Loss**, including **Defense Costs**. If the Insurer's maximum aggregate limit of liability, as set forth in Item 3 of the Declarations, is exhausted by the payment of **Loss**, including **Defense Costs**, the premium will be fully earned.

(E) <u>Cancellation or Nonrenewal</u>

  (1) The Insurer may cancel this Policy for non-payment of premium by sending not less than ten (10) days' notice to the **Named Organization** at its last known address. The Insurer may not otherwise cancel this Policy.

  (2) The **Named Organization** may cancel this Policy by mailing the Insurer written notice stating when such cancellation will be effective; provided, that the **Named Organization** may not cancel this Policy after the effective date of any acquisition of the **Named Organization** as described in CONDITION (F)(1) below. If the **Named Organization** cancels this Policy, the Insurer will retain the customary short rate premium. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment of unearned premium is not a condition of cancellation.

  (3) If the Insurer elects not to renew this Policy, the Insurer must give the **Named Organization** notice of non-renewal no less than sixty (60) days before the end of the **Policy Period**.

  (4) If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period will be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(F) <u>Changes in Exposure</u>

  (1) If, during the **Policy Period**, any of the following transactions or events (each a "Change in Control") occurs with respect to the **Named Organization**:

    (a) the **Named Organization** merges into or consolidates with another entity such that the **Named Organization** is not the surviving entity, or

    (b) another entity, person or group of entities and/or persons acting in concert acquires the right to elect, appoint or designate more than 50% of the directors or managers of the **Named Organization**, or

U.S. SPECIALTY INSURANCE COMPANY

      (c)     a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official is duly appointed with respect to the **Named Organization**;

then coverage under this Policy will continue in full force and effect until the end of the **Policy Period** with respect to **Claims** for **Wrongful Acts** committed or allegedly committed before the effective date of such Change in Control, but coverage will cease with respect to **Claims** for **Wrongful Acts** committed or allegedly committed thereafter and the premium will be considered fully earned in consideration of the coverage extended.

(2)    If, during the **Policy Period**, any of the following transactions or events (each a "Change in Control") occurs with respect to a **Subsidiary**:

      (a)     the **Subsidiary** ceases to be a **Subsidiary**, or

      (b)     a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar office is duly appointed with respect to the **Subsidiary**;

then coverage under this Policy with respect to **Claims** against such **Subsidiary** or any **Insured Person** thereof will continue in full force and effect until the end of the **Policy Period** with respect to **Claims** for **Wrongful Acts** committed or allegedly committed before the effective date of such Change in Control, but coverage under this Policy with respect to **Claims** against such **Subsidiary** or any **Insured Person** thereof will cease with respect to **Claims** for **Wrongful Acts** committed or allegedly committed thereafter.

(3)    If, during the **Policy Period**, the **Insured Organization** acquires any assets and/or liabilities, acquires a **Subsidiary** or acquires any entity by merger and, at the time of such transaction, the assets and/or liabilities so acquired or the assets and/or liabilities of the entity so acquired exceed twenty-five (25%) of the total assets of the **Insured Organization** as reflected in the **Insured Organization's** most recent audited consolidated financial statements, such entity will be included with the term "**Subsidiary**" for a period of ninety (90) days after the date of such transaction. There will be no coverage under this Policy in respect of any **Claim** against the **Insureds** which is first made more than ninety (90) days after the effective date of the transaction described in this CONDITION (F)(3) unless the Insurer has received written notice containing full details of such transaction and the Insurer has agreed to provide such coverage. No coverage will be available under this policy for **Loss**, including **Defense Expenses**, from any **Claim** against any entity, or

**EXHIBIT 1**

U.S. SPECIALTY INSURANCE COMPANY

the **Insured Persons** of any entity, included with the term **"Subsidiary"** by reason of this CONDITION (F)(3) for any **Wrongful Act** committed or allegedly committed before the date of such transaction.

(G)     Other Insurance and Other Indemnification

(1)     Such insurance as is provided by this Policy will apply only as excess over and will not contribute with any other valid and collectible insurance.

(2)     All coverage for **Loss** from **Claims** against **Insured Persons** for **Wrongful Acts** in their **Outside Capacities** will be specifically excess of, and will not contribute with, any other insurance available to such **Insured Persons** by reason of their service in **Outside Capacities**, and any indemnification available to such **Insured Persons** in connection with their service in **Outside Capacities** from any source other than the **Insured Organization**, including but not limited to **Outside Entities**.

(H)     Cooperation and Subrogation

(1)     In the event of any notice under CONDITION (B) of a **Claim** or of circumstances which may reasonably be expected to give rise to a **Claim**, the **Insureds** will give the Insurer all information, assistance and cooperation that the Insurer may reasonably request with respect thereto.

(2)     In the event of any payment under this Policy, the Insurer will be subrogated to the extent of such payment to all of the Insureds' rights of recovery, including without limitation the **Insured Persons'** rights to indemnification or advancement from the **Insured Organization**.  The **Insureds** must execute all papers required and do everything necessary to secure such rights and to enable the Insurer to bring suit in their name.

(I)     No Action against the Insurer

No action may be taken against the Insurer unless, as a condition precedent thereto, there has been full compliance with all of the terms of this Policy and until the amount of the **Insureds'** obligation to pay shall have been finally determined either by judgment against an **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the Insurer.  No person or organization will have any right under this Policy to join the Insurer as a party to any action against the **Insureds** to determine the Insurer's liability; nor may the Insurer be impleaded by the **Insureds** or their legal representatives in any such action.

**EXHIBIT 1**

U.S. SPECIALTY INSURANCE COMPANY

(J)     Notices and Authority

By acceptance of this Policy, the **Insureds** agree that the **Named Organization** may act on behalf of all **Insureds** with respect to the giving and receiving of any notices, the payment of premiums and the receiving of any return premium, the cancellation or renewal of this Policy and the acceptance of any amendments thereto.

(K)     Assignment

No assignment of interest under this Policy will bind the Insurer without the Insurer's written consent.

(L)     Titles and Headings

The titles and headings to the various paragraphs and sections in this Policy, including endorsements attached, are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such paragraphs and sections to which they relate.

(M)     Representations and Severability

The **Insureds** represent that the particulars and statements contained in the **Application** are true, accurate and complete and are deemed material to the acceptance of the risk assumed by the Insurer under this Policy.  This Policy is issued in reliance upon the truth of such representations. No knowledge or information possessed by any **Insured** will be imputed to any other **Insured** except for material facts or information known to the person or persons who signed the **Application**.  If any of the particulars or statements in the **Application** is untrue, this Policy will be void with respect to any **Insured** who knew of such untruth or to whom such knowledge is imputed.

(N)     Changes

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not effect a waiver or a change in any part of this Policy or stop the Insurer from asserting any right under the terms of this Policy. This Policy cannot be waived or changed, except by written endorsement issued to form a part of this Policy.

(O)     Entire Agreement

By acceptance of this Policy, the **Insureds** and the Insurer agree that this Policy (including the **Application** and any materials submitted therewith) and any written endorsements attached hereto constitute the entire agreement the parties with respect to this insurance.

**EXHIBIT 1**

**U.S. SPECIALTY INSURANCE COMPANY**

(P)     <u>Territory</u>

This Policy applies to **Wrongful Acts** actually or allegedly taking place or **Claims** made anywhere in the world.

(Q)     <u>Conformity to Statute</u>

Any terms of this Policy which are in conflict with the terms of any applicable laws construing this Policy, including any endorsement to this Policy which is required by any state Department of Insurance (or equivalent authority) ("State Amendatory Endorsement"), are hereby amended to conform to such laws. Nothing herein will be construed to restrict the terms of any State Amendatory Endorsement.  In addition, to the extent permissible by law, nothing in any State Amendatory Endorsement will be construed to restrict the terms of this Policy.

In witness whereof the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations Page by a duly authorized representative of the Insurer.

Secretary                          President

**EXHIBIT 1**

ENDORSEMENT NUMBER:  1

**AMEND OTHER INSURANCE CLAUSE**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, CONDITION (G), subsection (1), is deleted and replaced with the following:

(1)    Unless expressly written to be excess over other applicable insurance, this Policy is intended to provide primary insurance.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:  _____
          Attorney-in-Fact

**EXHIBIT 1**

ENDORSEMENT NUMBER:  2

**ADD INSURED PERSONS**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.


In consideration of the premium charged, the individuals listed below will, after the effective date of this Endorsement, be included within the term "**Insured Person**":

Advisory Board
Committee Members
General Counsel
Risk Manager


All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:


By: _____
　　　　　Attorney-in-Fact

1055-300                     Page 1 of 1
Rev. 05/00

**EXHIBIT 1**

ENDORSEMENT NUMBER:  3

**AMEND DEFINITION OF CLAIM
TO EXCLUDE ORAL DEMANDS**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to
Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that subsection (1) of DEFINITION
(B) **Claim** is deleted and replaced with the following:

> (1)    any written demand, including any written demand for non-monetary
> relief,

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is
not to be effective with the Policy.

Effective date of this endorsement:

By:_____
        Attorney-in-Fact

1055-303                         Page 1 of 1
Ed. 01/12

**EXHIBIT 1**

ENDORSEMENT NUMBER:  4

**AMEND DEFINITION OF CLAIM
TO INCLUDE TOLLING AGREEMENTS**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that DEFINITION (B) **Claim** is amended to include any written request or agreement to toll or waive any applicable statute of limitations.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
            Attorney-in-Fact

1055-312                        Page 1 of 1
Ed. 02/06

**EXHIBIT 1**

ENDORSEMENT NUMBER:  5

**AMEND OUTSIDE ENTITY TO
INCLUDE ALL NON-PROFIT ORGANIZATIONS**

　　　To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to
Sungevity, Inc. by U.S. Specialty Insurance Company.


In consideration of the premium charged, DEFINITION (M) **Outside Entity** is amended
to read as follows:

　　　(M)　　**Outside Entity** means:

　　　　　(1)　　any corporation or organization other than the **Insured
　　　　　　　　Organization** which is exempt from taxation under Section
　　　　　　　　501(c)(3) of the Internal Revenue Code of 1986, as the same may
　　　　　　　　be amended from time to time; or

　　　　　(2)　　any other not-for-profit organization.


All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is
not to be effective with the Policy.

　　　Effective date of this endorsement:


By: _____
　　　　　　　Attorney-in-Fact


1055-314　　　　　　　　　Page 1 of 1
Ed. 06/03

**EXHIBIT 1**

ENDORSEMENT NUMBER:  6

**FOR-PROFIT ODL EXTENSION**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that:

(1)     DEFINITION (M) **Outside Entity** is amended to include the following for-profit entity(ies) (each a "For-Profit **Outside Entity**"):

Sungevity Australia Pty Ltd.

(2)     Solely with respect to an **Insured Person** serving in an **Outside Capacity** with a For-Profit **Outside Entity**:

(a)     the Insurer will not be liable to make any payment of **Loss** in connection with a **Claim** arising out of, based upon or attributable to any act, error, omission or other wrongdoing committed or allegedly committed prior to 12/1/2014; and

(b)     EXCLUSION (I) is amended to read in its entirety as follows:

(I)     The Insurer will not be liable to make any payment of **Loss** in connection with a **Claim** arising out of, based upon or attributable to any pending or prior litigation as of 12/1/2014, or alleging or derived from the same or essentially the same facts or circumstances as alleged in such pending or prior litigation.

(3)     If the Insurer (including any affiliate of the Insurer) shall have issued a policy of insurance to a For-Profit **Outside Entity**, and a **Claim** gives rise to coverage under both this Policy and such other policy, then the Insurer's combined maximum aggregate limit of liability under all such policies with respect to such **Claim** shall not exceed the largest single available limit of liability under any such policy.  Nothing in this paragraph (3) is intended, nor shall it be construed, to increase the limit of liability under this Policy (which shall remain the amount set forth in Item 3 of the Declarations) or the limit of liability under any other policy.

**EXHIBIT 1**

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:


By:_____

Attorney-in-Fact


1055-320
Ed. 02/12

Page 2 of 2

**EXHIBIT 1**

ENDORSEMENT NUMBER:  7

## AMEND INSURED PERSON TO INCLUDE LEASED EMPLOYEES AND INDEPENDENT CONTRACTORS (EPL CLAIMS ONLY)

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that, solely with respect to **Claims** for **Employment Practices Wrongful Acts**, DEFINITION (I) **Insured Person** is amended to include:

    (i)    any leased employee whose labor or service is engaged by and directed by the **Insured Organization**, and

    (ii)   any individual who serves as an independent contractor of the **Insured Organization**,

but only if the **Insured Organization** provides indemnification to such employee/ individual in the same manner as that provided to the **Insured Organization's Employees**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
               Attorney-in-Fact

**EXHIBIT 1**

ENDORSEMENT NUMBER:  8

**FAMILY AND MEDICAL LEAVE ACT ENDORSEMENT**
**(INCLUDE STATE & LOCAL EQUIVALENTS)**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that Subsection (7) of DEFINITION (F) **Employment Practices Wrongful Act** is amended to read in its entirety as follows:

(7)     Violation of the Family and Medical Leave Act of 1993 or amendments thereto, violation of any equivalent provisions of state or local law, or violation of any rules or regulations promulgated under any of the foregoing.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                    Attorney-in-Fact

1055-327                          Page 1 of 1
Ed. 01/05

**EXHIBIT 1**

ENDORSEMENT NUMBER:  9

**AMEND DEFINITION OF CLAIM**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that subsection (5) of DEFINITION (B) **Claim** is amended to read in its entirety as follows:

(5)     any criminal proceeding commenced by the return of an indictment or information, or

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                        Attorney-in-Fact

1055-329                        Page 1 of 1
Ed. 06/05

**EXHIBIT 1**

ENDORSEMENT NUMBER:  10

**AMEND LOSS TO INCLUDE
PRE- AND POST-JUDGMENT INTEREST**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the word "judgments" is deleted from DEFINITION (J) **Loss** and replaced with the following:

judgments (including pre- and post-judgment interest on covered judgments)

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
Attorney-in-Fact

1055-333                          Page 1 of 1
Ed. 01/06

**EXHIBIT 1**

ENDORSEMENT NUMBER:  11

**EXTRADITION COVERAGE ENDORSEMENT**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that:

(1)   The DEFINITIONS section of this Policy is amended to include the following:

**Extradition** means any formal process by which an **Insured Person** is surrendered from one country to another country to face a criminal trial (or otherwise answer a criminal accusation) in connection with his or her actual or alleged **Wrongful Acts**.

(2)   Where permitted by law:

(a)   DEFINITION (B) **Claim** is amended to include:

(i)     any official request for **Extradition** of an **Insured Person**; or

(ii)    the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**.

(b)   DEFINITION (C) **Defense Costs** is amended to include reasonable legal fees, costs and expenses consented to by the Insurer resulting from an **Insured Person's** lawful:

(i)     opposition or challenge to or defense against the **Extradition** of such **Insured Person**; or

(ii)    appeal of an order granting **Extradition** of such **Insured Person**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____

Attorney-in-Fact

**EXHIBIT 1**

ENDORSEMENT NUMBER:  12

**AMEND LOSS TO INCLUDE**
**CERTAIN PENALTIES UNDER FCPA**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that:

(1)     DEFINITION (J) **Loss** is amended to include civil penalties assessed against an **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2 (hereinafter, "**Certain FCPA Penalties**").  Accordingly, **Certain FCPA Penalties** will not be deemed "fines" or "penalties," as such terms are used in DEFINITION (J).

(2)     Except as expressly provided for in paragraph (1) of this endorsement, coverage for **Certain FCPA Penalties** shall be subject to all of this Policy's terms and conditions, including but not limited to any and all EXCLUSIONS.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: _____
             Attorney-in-Fact

**EXHIBIT 1**

ENDORSEMENT NUMBER:  13

**AMEND BREACH OF CONTRACT EXCLUSION**
**(APPLY TO ENTITY CLAIMS ONLY)**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the following clause is added to EXCLUSION (P):

provided, further, that this EXCLUSION (P) will apply only to **Claims** against the **Insured Organization**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                       Attorney-in-Fact

**EXHIBIT 1**

ENDORSEMENT NUMBER:  14

**PRODUCT LIABILITY EXCLUSION**
**WITH A-SIDE AND SECURITIES CLAIM CARVEBACKS**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, the Insurer will not be liable to make any payment of **Loss** in connection with a **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any actual or alleged malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency or inadequacy in the design or manufacture of such product; provided, that this exclusion shall not apply to:

    (1)    **Loss** under INSURING AGREEMENT (A); or

    (2)    any **Claim** brought by a security holder of the **Insured Organization** in his or her capacity as such.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

    By: _____
                Attorney-in-Fact

1055-431
Ed. 10/00

Page 1 of 1

**EXHIBIT 1**

ENDORSEMENT NUMBER:  15

**AMEND SECURITIES EXCLUSION**

     To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that EXCLUSION (N) is deleted and replaced with the following:

(N)    for any actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, any state "blue sky" law, any rule or regulation promulgated under any of the foregoing, or any other provision of federal, state or common law imposing liability in connection with the registration, offer, sale or purchase of securities; provided, however, that this EXCLUSION (N) shall not apply to any **Claim** arising out of:

    (1)    any private placement of any debt or equity securities;

    (2)    any placement of the **Insured Organization's** securities exempted from registration under the Securities Act of 1933; or

    (3)    any **Wrongful Act** relating to the **Insured Organization's** preparation for any public offering of the **Insured Organization's** securities, including but not limited to any "road show," if such public offering does not occur;

provided, further, that if at least thirty (30) days prior to any initial public offering of stock of the **Insured Organization** or any purchase or sale, or any offer to purchase or sell, any public debt securities of the **Insured Organization**, the **Insured Organization** gives the Insurer written notice thereof together with any information with respect thereto as the Insurer may request, the Insurer will offer a proposal to provide coverage with respect to such event, subject to such additional terms, conditions and limitations of coverage and such additional premium as the Insurer may require;

1055-475
Ed. 06/10

**EXHIBIT 1**

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

      Effective date of this endorsement:

By:_____
                   Attorney-in-Fact

**EXHIBIT 1**

ENDORSEMENT NUMBER:  16

**AMEND WILLFUL VIOLATION OF LAW EXCLUSION**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, EXCLUSION (K) is amended to read as follows:

(K)    brought about or contributed to by any willful violation of law, statute, rule or regulation by any **Insured**; provided, that this EXCLUSION (K) will apply to an **Insured** only if there has been a final adjudication adverse to such **Insured** establishing that the **Insured** committed such willful violation, and provided further, that this EXCLUSION (K) will not apply to any **Claim** for an **Employment Practices Wrongful Act**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:    _____
                   Attorney-in-Fact

1055-476                              Page 1 of 1
Ed. 11/03

**EXHIBIT 1**

ENDORSEMENT NUMBER:  17

**AMEND ERISA EXCLUSION:
CARVEBACK FOR RETALIATION CLAIMS**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that EXCLUSION (E) is amended to read as follows:

(E)     for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 or any regulations promulgated thereunder ("ERISA") or of any similar law or regulations or any other actual or alleged **Wrongful Act** in the administration of employee benefits; provided, that this EXCLUSION (E) shall not apply to any **Claim** for any actual or alleged **Retaliation**, including any alleged violation of Section 510 of ERISA;

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:  _____
                    Attorney-in-Fact

1055-479                              Page 1 of 1
Ed. 11/03

**EXHIBIT 1**

ENDORSEMENT NUMBER:  18

**AMEND PENDING OR PRIOR LITIGATION EXCLUSION
(SEPARATE DATE FOR EPL CLAIMS; SPLIT
LIMIT FOR NON-EPL CLAIMS)**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that EXCLUSION (I) is amended to read in its entirety as follows:

(I)    (1)    With respect to any **Claim** which alleges an **Employment Practices Wrongful Act**, the Insurer will not be liable to make any payment of **Loss** if such **Claim** arises out of, is based upon or is attributable to any pending or prior litigation as of 11/19/2007, or alleges or is derived from the same or essentially the same facts or circumstances as alleged in such pending or prior litigation;

    (2)    With respect to any other **Claim**:

        (a)    but solely with respect to the first $1,000,000 of the applicable limit of liability, the Insurer will not be liable to make any payment of **Loss** if such **Claim** arises out of, is based upon or is attributable to any pending or prior litigation as of 11/19/2007, or alleges or is derived from the same or essentially the same facts or circumstances as alleged in such pending or prior litigation;

        (b)    but solely with respect to the remaining $4,000,000 of the applicable limit of liability (excess of $1,000,000), the Insurer will not be liable to make any payment of **Loss** if such **Claim** arises out of, is based upon or is attributable to any pending or prior litigation as of 2/24/2010, or alleges or is derived from the same or essentially the same facts or circumstances as alleged in such pending or prior litigation;

**EXHIBIT 1**

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: _____

Attorney-in-Fact

**EXHIBIT 1**

ENDORSEMENT NUMBER:  19

**DELETE EXCLUSION K**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that EXCLUSION K is deleted in its entirety.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: _____
                              Attorney-in-Fact

1055-483                              Page 1 of 1
Ed. 03/04

**EXHIBIT 1**

ENDORSEMENT NUMBER:  20

**DISCOVERY PERIOD OPTIONS**
**(BI-LATERAL DISCOVERY)**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged:

(1)   The DISCOVERY PERIOD section of the Policy is deleted in its entirety and replaced by the following:

DISCOVERY PERIOD

If the Insurer or the **Named Organization** fails or refuses to renew this Policy or if the **Named Organization** cancels this Policy, any **Insured** will have the right, upon payment of the respective Discovery Period Premium set forth below, to an extension of the coverage granted by this Policy for the respective period set forth below following the effective date of such non-renewal (the "Discovery Period"), but only with respect to any **Wrongful Act** actually or allegedly taking place before the effective date of such non-renewal.  A written request for this extension, together with payment of the Discovery Period Premium, must be made within thirty (30) days after the effective date of non-renewal of the Policy. Such Discovery Period Premium will be deemed to be fully earned as of the inception of the Discovery Period.  This clause and the right contained within will not apply if this Policy is terminated by the Insurer for failure to pay any premium when due.

| Discovery Period | Discovery Period Premium |
|---|---|
| 1 year | 150% of the annual premium |
| 2 years | N/A |
| 3 years | N/A |

(2)   Items 7(a) and 7(b) of the Declarations are hereby deleted.

1055-503                    Page 1 of 2
Ed. 06/03

**EXHIBIT 1**

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: _____
        Attorney-in-Fact

1055-503
Ed. 06/03

Page 2 of 2

**EXHIBIT 1**

ENDORSEMENT NUMBER:  21

**DOMESTIC PARTNER COVERAGE EXTENSION**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the term "spouse," as used in EXTENSION (B) of this Policy, will include an **Insured Person's** domestic partner.  As used in this endorsement, "domestic partner" means a natural person qualifying as a domestic partner under the provisions of applicable federal, state or local law or under the provisions of a formal program established by the **Insured Organization**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: _____
                    Attorney-in-Fact

1055-602                              Page 1 of 1
Ed. 07/06

**EXHIBIT 1**

ENDORSEMENT NUMBER:  22

## ORDER OF PAYMENTS ENDORSEMENT

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, CONDITION (D) **Defense Costs, Settlements, Allocation** is amended by the addition of the following subsection:

(5)   If the Insurer is obligated to pay **Loss**, including **Defense Costs**, under more than one INSURING AGREEMENT, whether in connection with a single **Claim** or multiple **Claims**, the Insurer will first pay any **Loss** payable under INSURING AGREEMENT (A) and, if the Insurer concludes that the amount of all **Loss**, including **Defense Costs**, is likely to exceed the Insurer's Limit of Liability, the Insurer shall be entitled to withhold some or all of any **Loss** payable under INSURING AGREEMENT (B) to ensure that as much of the Limit of Liability as possible is available for the payment of **Loss** under INSURING AGREEMENT (A).  If no **Loss** is payable under INSURING AGREEMENT (A), or if the Insurer's obligations under INSURING AGREEMENT (A) have been satisfied, then, subject to the Insurer's Limit of Liability as set forth in Item 3 of the Declarations, the Insurer will pay such **Loss** as it is required to pay under INSURING AGREEMENT (B) in such manner and, in the event of multiple **Claims**, apportioned among such **Claims** as the **Named Organization** shall direct in writing.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: _____

        Attorney-in-Fact

1055-708                          Page 1 of 1
Ed. 08/02

**EXHIBIT 1**

ENDORSEMENT NUMBER:  23

**AMEND NOTICE OF CLAIM PROVISION**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that CONDITION (B)(4) is amended to read as follows:

(4)     All notices under this CONDITION (B) must refer to the Policy Number, must be in writing, must request coverage under this Policy, and must be given by facsimile, mail or prepaid express courier to the address set forth in Item 8 of the Declarations.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:  _____

   Attorney-in-Fact

1055-711                              Page 1 of 1
Ed. 04/03

**EXHIBIT 1**

ENDORSEMENT NUMBER:  24

**FULL SEVERABILITY**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, CONDITION (M) Representations and Severability is amended to read as follows:

(M)     Representations and Severability

The **Insureds** represent that the particulars and statements contained in the **Application** are true, accurate and complete and are deemed material to the acceptance of the risk assumed by the Insurer under this Policy.  This Policy is issued in reliance upon the truth of such representations.  No knowledge or information possessed by any **Insured** will be imputed to any other **Insured**.  If any of the particulars or statements in the **Application** is untrue, this Policy will be void with respect to any **Insured** who knew of such untruth.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: _____
                    Attorney-in-Fact

1055-713                          Page 1 of 1
Ed. 01/04

**EXHIBIT 1**

ENDORSEMENT NUMBER: 25

## AMEND NOTICE OF CLAIMS PROVISION

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that:

(1)   CONDITION (B)(1) is deleted and replaced with the following:

    (1)   The **Insureds** must, as a condition precedent to the obligations of the Insurer under this Policy, give written notice, including full details, to the Insurer of any **Claim** as soon as practicable after the **Insured Organization's** General Counsel or Risk Manager becomes aware of such **Claim**.  This notice requirement shall apply only if and when the **Insureds** reasonably believe or should reasonably believe that the total **Loss**, including **Defense Costs**, resulting from such **Claim** may exceed 50% of the retention applicable to such **Claim**.

(2)   Notwithstanding CONDITION (D)(1), in the event of any **Claim** that the **Insureds** reasonably believe will not result in a total amount of **Loss**, including **Defense Costs**, in excess of 50% of the applicable retention, the **Insureds** may incur **Defense Costs** in connection with such **Claim** and may settle such **Claim**, provided that the total amount of **Loss** resulting from such **Claim** does not exceed 50% of the applicable retention.

If the **Insured** does not have a person serving in the position(s) specified above, then this endorsement will be of no effect and the notice provision found in the Policy will apply.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

    Effective date of this endorsement:

            By: _____
                    Attorney-in-Fact

1055-727                              Page 1 of 1
Ed. 06/14

**EXHIBIT 1**

ENDORSEMENT NUMBER:  26

## AMEND CONDITION (F), CHANGES IN EXPOSURE
## (NO RUNOFF IF BANKRUPTCY)

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that CONDITIONS (F)(1)(c) and (F)(2)(b) are deleted from this Policy.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:  _____
                 Attorney-in-Fact

1055-730                          Page 1 of 1
Ed. 03/07

**EXHIBIT 1**

ENDORSEMENT NUMBER:  27

**AMEND SUBROGATION PROVISION**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the following sentence is added at the end of CONDITION (H)(2):

Notwithstanding the foregoing, the Insurer will not exercise its rights of subrogation against an **Insured Person** in a **Claim** unless EXCLUSION (A) and/or EXCLUSION (B) of this Policy applies to such **Claim**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
          Attorney-in-Fact

1055-745                        Page 1 of 1
Ed. 12/11

**EXHIBIT 1**

ENDORSEMENT NUMBER: 28

**SEPARATE LIMIT ENDORSEMENT**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged:

(1)   ITEM 3 of the Declarations is amended to read as follows:

| ITEM 3. | LIMITS OF LIABILITY (inclusive of **Defense Costs**): | |
|---|---|---|
| (a) | $3,000,000 | in the aggregate, for **Loss** under INSURING AGREEMENTS A and B combined, resulting from **Claims** for covered **Employment Practices Wrongful Acts** |
| (b) | $5,000,000 | in the aggregate, for **Loss** under INSURING AGREEMENTS A and B combined, resulting from **Claims** for **Wrongful Acts** other than **Employment Practices Wrongful Acts** |

(2)   CONDITION (A) is amended to read as follows:

(A)   <u>Limits of Liability and Retention</u>

(1)   The Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period** for covered **Employment Practices Wrongful Acts** will not exceed the Limit of Liability set forth in Item 3(a) of the Declarations. The Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period** for **Wrongful Acts** other than **Employment Practices Wrongful Acts**, as defined in subparagraphs (2) and (3) of DEFINITION (U) (for purposes of this CONDITION (A), "**Non-EPL Wrongful Acts**"), will not exceed the Limit of Liability set forth in Item 3(b) of the Declarations. No portion of the Limit of Liability applicable to **Claims** for covered **Employment Practices Wrongful Acts** may be transferred or applied to increase the Limit of Liability applicable to **Claims** for **Non-EPL Wrongful Acts**, and vice versa. If a **Claim** is for both covered **Employment Practices Wrongful Acts** and **Non-EPL Wrongful Acts**, then **Loss**, including **Defense Costs**, incurred as a result of that portion of the **Claim** which is for covered **Employment Practices Wrongful Acts** will be applied against, and will be subject to, the Limit of

1055-802                                     Page 1 of 3
Ed. 03/04

**EXHIBIT 1**

Liability set forth in Item 3(a) of the Declarations, and **Loss**, including **Defense Costs**, incurred as a result of that portion of the **Claim** which is for **Non-EPL Wrongful Acts** will be applied against, and will be subject to, the Limit of Liability set forth in Item 3(b) of the Declarations; provided, however, that the Insurer's maximum aggregate limit of liability for all **Loss**, including **Defense Costs**, in respect of such **Claim** will not exceed an amount equal to the larger of the Limits of Liability available with respect to such **Claim**, as set forth in Item 3(a) or 3(b) of the Declarations.

(2)    **Defense Costs** will be part of and not in addition to each Limit of Liability, and payment of **Defense Costs** in respect of any **Claim** will reduce the Limit or Limits of Liability applicable thereto. **Defense Costs** incurred in connection with **Claims** for covered **Employment Practices Wrongful Acts** will also be applied, as incurred, against the retention.

(3)    The retention stated in Item 4 of the Declarations will apply to **Loss**, including **Defense Costs**:

(a)    which the **Insured Organization** is obligated to pay as a result of **Claims** against it for **Employment Practices Wrongful Acts**, or

(b)    which the **Insured Organization** is required or permitted to pay as indemnification or advancement to or on behalf of the **Insured Persons** as a result of **Claims** against them for **Employment Practices Wrongful Acts** in their capacities as directors, officers, members, managers or **Employees** of the **Insured Organization**, whether or not such **Loss** is actually paid, unless the **Insured Organization** is unable to pay such **Loss** as indemnification or advancement solely by reason of its financial insolvency.

The retention applicable to **Loss**, including **Defense Costs**, from **Claims** for **Non-EPL Wrongful Acts** will be $150,000.

(4)    For purposes of CONDITION (A)(3), the certificate of incorporation, charter, articles of association or other organizational documents of the **Named Organization** and each **Subsidiary**, including the bylaws and resolutions thereof, will be deemed to have been adopted or amended to provide

**EXHIBIT 1**

indemnification and advancement to the **Insured Persons** to the fullest extent permitted by law.

(5)     The Insurer will be liable only for the amount of **Loss** which is in excess of the applicable retention, if any.  Such retention is to be borne by the **Insureds** and remain uninsured.  A single retention will apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

(6)     One retention amount will apply to the covered portion of each and every single **Claim**.

(3)     CONDITION (D)(4) is amended to read as follows:

(4)     The Insurer will have no obligation to pay **Loss**, including **Defense Costs**, in connection with any **Claim** after the Insurer's maximum aggregate limit of liability applicable thereto, as set forth in ITEM 3 of the Declarations, has been exhausted by the payment of **Loss**, including **Defense Costs**.  If the Insurer's maximum aggregate limits of liability, as set forth in ITEM 3 of the Declarations, have been exhausted by the payment of **Loss**, including **Defense Costs**, the premium will be fully earned.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:  _____
                        Attorney-in-Fact

1055-802                           Page 3 of 3
Ed. 03/04

**EXHIBIT 1**

ENDORSEMENT NUMBER:  29

**THIRD PARTY COVERAGE ENDORSEMENT**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged:

(1)   The term "**Third Party**" means any person(s) with whom an **Insured** interacts.

(2)   The term "**Third Party Discrimination**" means any discrimination by an **Insured** in his or her capacity as such against a **Third Party** based on such **Third Party's** race, color, religion, age, sex, national origin, disability, pregnancy, sexual orientation or preference, or other status that is protected pursuant to any applicable federal, state or local statute or ordinance.

(3)   The term "**Third Party Sexual Harassment**" means unwelcome sexual advances, requests for sexual favors, or other verbal, visual or physical conduct of a sexual nature that is made by an **Insured** to a **Third Party**.

(4)   The term "**Employment Practices Wrongful Act**," as defined in DEFINITION (F) of the Policy, is amended to include any actual or alleged **Third Party Discrimination** or **Third Party Sexual Harassment** as defined in paragraphs (2) and (3) above.

(5)   Solely with respect to the coverage afforded by this endorsement, no coverage will be available for any **Claim** arising out of or in way involving any fact, circumstance, situation, transaction, event or **Wrongful Act**:

(a)   underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding of which any insured had received written notice before 11/19/2007; or

(b)   which, before 11/19/2007, was the subject of any notice given by or on behalf of any **Insured** under any other policy of insurance.

(6)   Solely with respect to **Claims** against an **Insured** for **Third Party Discrimination** or **Third Party Sexual Harassment**, Item 4 of the Declarations is amended to read in its entirety as follows:

ITEM 4.   RETENTION: $150,000 (Provided, the retention is $0, per **Claim**, for **Loss** under INSURING AGREEMENT (A) as to which indemnification by the **Insured Organization** is not legally possible.)

**EXHIBIT 1**

With respect to all other **Claims,** Item 4 of the Declarations shall remain unchanged.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:   _____
                 Attorney-in-Fact

**EXHIBIT 1**

ENDORSEMENT NUMBER:  30

## DERIVATIVE DEMAND INVESTIGATION COSTS COVERAGE
## (SUBLIMIT; NO RETENTION)

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that:

(1)    The following INSURING AGREEMENT is added to the Policy:

DERIVATIVE DEMAND INVESTIGATION COSTS INSURING AGREEMENT:  The Insurer will pay, to or on behalf of the **Insured Organization**, **Investigation Costs** arising from **Derivative Demands** first received by the **Insured Organization** and reported in writing to the Insurer during the **Policy Period** or Discovery Period (if applicable).

(2)    The following DEFINITIONS are added to the Policy:

(a)    **Derivative Demand** means a written demand by one or more shareholders of the **Insured Organization** made upon its Board of Directors to bring a civil proceeding in a court of law against an **Insured Person** for a **Wrongful Act**.

(b)    **Investigation Costs** means reasonable fees, costs and expenses (including but not limited to attorneys' fees and experts' fees) incurred by the **Insured Organization** in investigating or evaluating a **Derivative Demand**, but excluding salaries, wages, fees, benefits or overhead expenses of any **Insured Person**.

(3)    For purposes of the DERIVATIVE DEMAND INVESTIGATION COSTS INSURING AGREEMENT, "Claim" means a **Derivative Demand** and "Loss" means **Investigation Costs**.

(4)    The Insurer's maximum aggregate liability for all **Investigation Costs** on account of all **Derivative Demands** first received by the **Insured Organization** during the same **Policy Period** (including the Discovery Period, if applicable) will not exceed $250,000.  Such amount is a sublimit; accordingly, it shall be part of, and not in addition to, the Limit of Liability set forth in Item 3 of the Declarations. No retention will apply to **Investigation Costs**, and Item 4 of the Declarations will be deemed amended accordingly.

1055-810                    Page 1 of 2
Ed. 11/09

**EXHIBIT 1**

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
        Attorney-in-Fact

**EXHIBIT 1**

ENDORSEMENT NUMBER:  31

**WAIVER OF RETENTION IF NO LIABILITY**

     To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged:

(1)    Notwithstanding anything in this policy to the contrary, if a **Claim** is finally resolved by a determination of **No Liability**, no retention will apply to such **Claim** even as respects **Defense Costs** and the Insurer will thereupon reimburse **Defense Costs** within the retention which shall already have been paid by the **Insureds**.  For purposes of this provision, the term **"No Liability"** means all defendant **Insureds** obtain by reason of a motion to dismiss, motion for summary judgment or trial a final non-appealable judgment in their favor.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

    Effective date of this endorsement:

          By:   _____
                        Attorney-in-Fact

**EXHIBIT 1**

ENDORSEMENT NUMBER: 32

## REDUCTION OF RETENTION UPON ACCEPTANCE
## OF FIRST SETTLEMENT OPPORTUNITY

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that if the Insurer recommends a settlement within the Policy's applicable Limit of Liability which is acceptable to the claimant (a "Settlement Opportunity"), and the **Insureds** consent to such a settlement, then the **Insured's** applicable retention amount shall be retroactively reduced by ten percent (10%) for such **Loss**. It shall be a condition to such reduction that the **Insureds** must consent to such settlement opportunity within thirty (30) days of the date the **Insureds** were first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made. However, if a Settlement Opportunity arises and the **Insureds** do not consent to the settlement within the time frame described above, the retention amount shall remain the applicable amount set forth in Item 4 of the Declarations even if consent is given to a subsequent settlement.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: _____
            Attorney-in-Fact

**EXHIBIT 1**

ENDORSEMENT NUMBER: 33

**NON-RESCINDABLE ENDORSEMENT –**
**INSURING AGREEMENT (A)/NON-INDEMNIFIABLE**
**CLAIMS ONLY**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that:

(1)   For purposes of this endorsement, "Non-Indemnifiable Claim" means any **Claim** made against an **Insured Person** with respect to which indemnification by the **Insured Organization** is not legally permissible.

(2)   Solely with respect to Non-Indemnifiable Claims, the Insurer shall not be entitled to rescind the coverage provided under INSURING AGREEMENT (A) of this Policy.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
              Attorney-in-Fact

1055-896                          Page 1 of 1
Ed. 08/04

**EXHIBIT 1**

ENDORSEMENT NUMBER:  34

**AMEND POLLUTION EXCLUSION**
**("A-SIDE" & DERIVATIVE CARVEBACKS)**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that EXCLUSION (D) is deleted and replaced with the following:

(D)    for the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants** or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, that this EXCLUSION (D) will not apply to:

    (1)    any **Claim** for **Loss** under INSURING AGREEMENT (A) as to which indemnification by the **Insured Organization** is not legally permissible; or

    (2)    any **Claim** brought as a derivative action by or on behalf of, or in the name or right of, a security holder of the **Insured Organization**, if such action is brought and maintained independently of, and without the solicitation, assistance or active participation of, the **Insured Organization** or any **Insured Person**;

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: _____
Attorney-in-Fact

**EXHIBIT 1**

ENDORSEMENT NUMBER:  35

**ERRORS & OMISSIONS EXCLUSION
(APPLICABLE TO ENTITY ONLY; WITH
SECURITY HOLDER CLAIM CARVEBACK)**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the Insurer will not be liable to make any payment of **Loss** in connection with any **Claim** against the **Insured Organization** arising out of, based upon or attributable to the rendering of or failure to render services for others, including without limitation services performed for or on behalf of customers or clients of the **Insured Organization**; provided, that this exclusion will not apply to **Claims** brought directly or derivatively by security holders of the **Insured Organization** in their capacity as such.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
Attorney-in-Fact

1055-4037                         Page 1 of 1
Ed. 08/08

**EXHIBIT 1**

ENDORSEMENT NUMBER:  36

## AMEND PRIOR NOTICE EXCLUSION

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that EXCLUSION (H) is deleted and replaced with the following:

(H)     arising out of, based upon or attributable to facts or circumstances alleged, or to the same or related **Wrongful Acts** alleged or contained, in any claim which has been reported, or with respect to which any notice has been given, under any directors and officers or employment practices liability policy or similar insurance of which this Policy is a renewal or replacement;

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                Attorney-in-Fact

**EXHIBIT 1**

ENDORSEMENT NUMBER: 37

### AMEND INSURED VS. INSURED EXCLUSION
### AND DEFINITIONS

     To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that:

(1)    EXCLUSION (F) is deleted and replaced with the following:

    (F)    brought by or on behalf of, or in the name or right of, the **Insured Organization**, whether directly or derivatively, or any **Insured Person**, unless such **Claim** is:

        (1)    brought and maintained independently of, and without the solicitation, assistance or active participation of, the **Insured Organization** or any **Insured Person** (For purposes of the foregoing, an **Insured Person's** providing **Specific Assistance** in a shareholder derivative action brought and maintained on behalf of the **Insured Organization** will not alone be deemed "solicitation, assistance or active participation");

        (2)    brought or maintained by an **Insured Person** for contribution or indemnity and directly results from another **Claim** covered under this Policy;

        (3)    for an actual or alleged **Employment Practices Wrongful Act**;

        (4)    brought and maintained by a former **Executive** who has not served as an **Executive** for at least two years prior to such **Claim** being first made;

        (5)    a **Foreign Claim**; or

        (6)    brought and maintained by the **Insured Organization** in its capacity as debtor-in-possession pursuant to a bankruptcy proceeding;

    provided, that this EXCLUSION (F) will not apply to **Claims** brought by a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator, creditors' committee or other similar official duly appointed with respect to the **Insured Organization**;

(2)    The DEFINITIONS section of this Policy is amended as set forth below.

    (a)    The following DEFINITIONS are added:

1055-4054            Page 1 of 2
Ed. 08/10

**EXHIBIT 1**

(i)     **Executive** means any director, officer, managing member or manager (or functional equivalent) of the **Insured Organization**.

(ii)    **Foreign Claim** means a **Claim** which is:

    A.    brought and maintained solely and entirely in a jurisdiction other than the United States (or its territories or possessions); and

    B.    subject to the substantive and procedural laws of a jurisdiction other than the United States (or its territories or possessions).

(iii)   **Specific Assistance** means assistance consisting of actions which are protected under Section 806 of the Sarbanes-Oxley Act of 2002 (or similar "whistleblower" protection provision of applicable federal, state, local or foreign securities law).

(b)    The following sentence is added to DEFINITION (H) **Insured Organization**:

In the event a bankruptcy proceeding is instituted by or against any of the foregoing entities, **Insured Organization** will also include the resulting debtor-in-possession (or equivalent status outside the United States), if any.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                           Attorney-in-Fact

**EXHIBIT 1**

ENDORSEMENT NUMBER:  38

## ADDITIONAL LIMIT OF LIABILITY ($1 MILLION) FOR NON-INDEMNIFIABLE CLAIMS AGAINST MANAGERS

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that:

(1)     For purposes of this endorsement, the following terms will have the following meanings:

**Initial Claim** means the earliest **Claim** for which this Policy provides coverage – *i.e.*, the first covered **Claim** as determined by the date on which it was first made against an **Insured**.

**Manager** means any **Insured Person** who is a director, officer, managing member or manager of the **Insured Organization**, including any person in a position which is the functional equivalent thereof with respect to any entity included within the definition of **Insured Organization** located outside the United States.

**Non-Indemnifiable Manager Claim** means a **Claim** made against a **Manager**:

   (i)     for which coverage is provided under INSURING AGREEMENT (A) of this Policy; and

   (i)     with respect to which indemnification by an **Insured Organization** is not legally permissible or is not possible by reason of the **Insured Organization's** financial insolvency.

(2)     Subject to this Policy's terms and conditions, an additional Limit of Liability of $1,000,000 ("Additional Limit") will be available for **Loss** (including **Defense Costs**) on account of **Non-Indemnifiable Manager Claims** first made during the **Policy Period**, provided that:

   (a)     The Additional Limit shall not be available with respect to a **Non-Indemnifiable Manager Claim** if it is the **Initial Claim**.  Accordingly, the Additional Limit only applies to **Non-Indemnifiable Manager Claims** first made subsequent to the **Initial Claim**.

   (b)     The Additional Limit shall not be available unless and until the Limit of Liability set forth in Item 3 of the Declarations has been exhausted by the payment of **Loss** (including **Defense Costs**).

1055-8042                              Page 1 of 2
Ed. 02/11

**EXHIBIT 1**

   (c)     The Additional Limit shall apply excess of all other insurance available with respect to **Non-Indemnifiable Manager Claims**, including but not limited to any insurance written as specifically excess of this Policy. Accordingly, the Additional Limit shall not be available unless and until such other insurance has been exhausted by payments made thereunder.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

    Effective date of this endorsement:

                 By:_____
                      Attorney-in-Fact

**EXHIBIT 1**

ENDORSEMENT NUMBER:  39

**POLICYHOLDER DISCLOSURE – TERRORISM PREMIUM NOTICE**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

Your Policy contains coverage for certain losses caused by terrorism.  We are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act, as amended in 2015 (hereinafter "TRIA").  TRIA also requires us to provide disclosure of federal participation in payment of terrorism losses resulting from an "act of terrorism" as defined by Section 102(1) of TRIA.

Section 102(1) of TRIA defines the term "act of terrorism" as any act that is certified by the Secretary of the Treasury of the United States – in concurrence with the Secretary of State of the United States and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Please be advised that the actual coverage provided by your Policy for acts of terrorism, as is true for all coverages, is limited by the terms, conditions, exclusions, limits and other provisions of your Policy, any endorsements to the Policy and generally applicable rules of law.

YOU SHOULD KNOW THAT, WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. UNDER THIS FORMULA, THE UNITED STATES GOVERNMENT generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year.  If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

80016
Ed. 01/15

Page 1 of 2

**EXHIBIT 1**

The amount of your premium that is attributable to coverage for terrorist acts certified under TRIA is $0.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

      Effective date of this endorsement:

                         By:_____
                                     Attorney-in-Fact

**EXHIBIT 1**

ENDORSEMENT NUMBER:  40

**POLICY PERIOD EXTENSION ENDORSEMENT**

To be attached to and made a part of Policy No. 14-MGU-16-A37264, issued to Sungevity, Inc. by U.S. Specialty Insurance Company.

In consideration of an additional premium of $12,585.00, it is agreed that subsection (b) of Item 2 **Policy Period** of the Declarations is amended to read in its entirety as follows:

    (b)     Expiration Date:  7/1/2017

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement: 4/1/2017

By: _____
                 Attorney-in-Fact

**EXHIBIT 1**

# U.S. SPECIALTY INSURANCE COMPANY

 **HCC**

HCC Global
8 Forest Park Drive, Farmington, Connecticut 06032
main 860 674 1900   facsimile 860 676 1737

## THE MAG

### RENEWAL APPLICATION

NOTICE: THE POLICY FOR WHICH THIS RENEWAL APPLICATION IS MADE APPLIES, SUBJECT TO ALL OF ITS TERMS, CONDITIONS AND LIMITATIONS, ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF APPLICABLE, THE DISCOVERY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF DEFENSE COSTS. DEFENSE COSTS WILL BE APPLIED AGAINST THE RETENTION. THE INSURER WILL HAVE NO DUTY UNDER THE POLICY TO DEFEND ANY INSURED.

NOTE: The term "**Applicant**" means the Organization and all subsidiaries.

1. General Information

   (a) Organization's name and principal address:
   (to be shown on the Declarations)
   *Sungevity Inc.*
   *66 Franklin Street Suite 310*
   *Oakland CA 94607*

   (b) Risk Manager: *Susan Hollingshead*
   E-Mail address: *shollingshead@sungevity.com*

   (c) Please list all locations of the Organization and the total employee count at each location.

   | Location (city, state) | # of Employees |
   |---|---|
   | *Oakland CA* | |
   | *Kansas City MO* | |
   | *Various field locations* | |

   (d) Please provide the following information for each subsidiary of the Organization:

   | Name | Location (city, state) | % Owned | # of Employees |
   |---|---|---|---|
   | *See attached* | | % | |
   | | | % | |
   | | | % | |

2. Insurance Information

   Does the Organization maintain the following insurance? If Yes, please provide the requested details.

   Crime ☑Yes ☐No   Limit: $_____   Insurer: _____   Expiration: _____
   Fiduciary Liability ☑Yes ☐No   Limit: $_____   Insurer: _____   Expiration: _____

**EXHIBIT 1**

**U.S. SPECIALTY INSURANCE COMPANY**

3. Employee Information

   (a) **Applicant's** total number of employees: ~~1042~~ *1025*
      (1) How many are full-time employees? ~~1142~~ *733*
      (2) How many are part-time employees
          (including seasonal and temporary)? *294*

   (b) Percentage of employees with total annual compensation:
       Below $25,000                  36%
       $25,001 - $50,000              25%
       $50,001 - $100,000             23%
       $100,001 – $250,000            15 %
       Over $250,000                  1 %

   (c) How many employees have been terminated during the past year? *188*

4. Ownership and Operations

   NOTE:   If the **Applicant** answers "Yes" to any of the following questions, please provide
           complete details in a separate addendum to this Application.

   (a) Has the ownership of the **Applicant** changed over the past year?        ☐Yes ☒No

   (b) Does the **Applicant** anticipate any private placement or public
       offering of securities within the next 12 months?                         ☐ Yes ☒No

   (c) Have there been any changes in the **Applicant's** board of directors
       or senior management during the past year?                                ☒Yes ☐ No
       *CFO resigned; SVP of Treasury is acting; added one*
   (d) Has the **Applicant** acquired, sold or spun-off any companies or *BOD member*
       divisions during the past year?    *and one finished*                     ☐ Yes ☒No
                                           *term*

   (e) Does the **Applicant** anticipate:

       (1) any acquisition, sale or spin-off of any company or division
           within the next 12 months?                                            ☐ Yes ☒No
       (2) any closing or consolidation of any plants, facilities, branches
           or offices, or other downsizing or layoffs, within the next 12
           months?                                                               ☐ Yes ☒No

5. Documents Required

   Please provide a copy of the following documents, all of which will be deemed to be attached to and
   to be a part of this **Application**:

       (a) The **Applicant's** most recent audited financial statements, including all notes and
           schedules.
       (b) Any registration statements filed with the SEC or any private placement memoranda
           within the last 12 months.

**EXHIBIT 1**

## U.S. SPECIALTY INSURANCE COMPANY

THE UNDERSIGNED AUTHORIZED AGENT OF THE APPLICANT DECLARES THAT TO THE BEST OF HIS/HER KNOWLEDGE AND BELIEF, AFTER REASONABLE INQUIRY, THE STATEMENTS SET FORTH HEREIN, AND THE INFORMATION SUBMITTED HEREWITH, ARE TRUE AND COMPLETE. IF THE INFORMATION IN THIS APPLICATION CHANGES PRIOR TO THE INCEPTION DATE OF THE POLICY, THE APPLICANT WILL NOTIFY THE INSURER OF SUCH CHANGES, AND THE INSURER MAY MODIFY OR WITHDRAW ANY OUTSTANDING QUOTATION. THE INSURER IS AUTHORIZED TO MAKE INQUIRY IN CONNECTION WITH THIS APPLICATION.

THE SIGNING OF THIS APPLICATION DOES NOT BIND THE COMPANY TO OFFER, NOR THE APPLICANT TO PURCHASE, THE INSURANCE. IT IS AGREED THAT THIS APPLICATION, INCLUDING ANY MATERIAL SUBMITTED THEREWITH, SHALL BE THE BASIS OF THE INSURANCE AND SHALL BE CONSIDERED PHYSICALLY ATTACHED TO AND PART OF THE POLICY. THE INSURER WILL HAVE RELIED ON THIS APPLICATION, INCLUDING ANY MATERIAL SUBMITTED THEREWITH, IN ISSUING THE POLICY.

**NOTICE TO ALABAMA APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO RESTITUTION FINES OR CONFINEMENT IN PRISON, OR ANY COMBINATION THEREOF.

**NOTICE TO ALASKA APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE AN INSURANCE COMPANY FILES A CLAIM CONTAINING FALSE, INCOMPLETE OR MISLEADING INFORMATION MAY BE PROSECUTED UNDER STATE LAW.

**NOTICE TO ARIZONA APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO ARKANSAS, DISTRICT OF COLUMBIA, LOUISIANA, RHODE ISLAND & WEST VIRGINIA APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**NOTICE TO CALIFORNIA & TEXAS APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR THE PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE PRISON.

**NOTICE TO COLORADO APPLICANTS:** IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

**NOTICE TO DELAWARE APPLICANTS:** ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

**EXHIBIT 1**

## U.S. SPECIALTY INSURANCE COMPANY

**NOTICE TO FLORIDA APPLICANTS:**  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

**NOTICE TO IDAHO APPLICANTS:**  ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO DEFRAUD OR DECEIVE ANY INSURANCE COMPANY, FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

**NOTICE TO INDIANA APPLICANTS:**  A PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD AN INSURER FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION COMMITS A FELONY.

**NOTICE TO KANSAS APPLICANTS:**  ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO DEFRAUD, PRESENTS, CAUSES TO BE PRESENTED OR PREPARES WITH KNOWLEDGE OR BELIEF THAT IT WILL BE PRESENTED TO OR BY AN INSURER, PURPORTED INSURER, BROKER OR ANY AGENT THEREOF, ANY WRITTEN STATEMENT AS PART OF, OR IN SUPPORT OF, AN APPLICATION FOR THE ISSUANCE OF, OR THE RATING OF AN INSURANCE POLICY FOR PERSONAL OR COMMERCIAL INSURANCE, OR A CLAIM FOR PAYMENT OR OTHER BENEFIT PURSUANT TO AN INSURANCE POLICY FOR COMMERCIAL OR PERSONAL INSURANCE WHICH SUCH PERSON KNOWS TO CONTAIN MATERIALLY FALSE INFORMATION CONCERNING ANY FACT MATERIAL THERETO; OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO KENTUCKY APPLICANTS:**  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

**NOTICE TO MAINE APPLICANTS:**  IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY.  PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR DENIAL OF INSURANCE BENEFITS.

**NOTICE TO MARYLAND APPLICANTS:**  ANY PERSON WHO KNOWINGLY OR WILLFULLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY OR WILLFULLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**NOTICE TO MINNESOTA APPLICANTS:**  A PERSON WHO FILES A CLAIM WITH INTENT TO DEFRAUD OR HELPS COMMIT A FRAUD AGAINST AN INSURER IS GUILTY OF A CRIME.

**NOTICE TO NEW HAMPSHIRE APPLICANTS:**  ANY PERSON WHO, WITH A PURPOSE TO INJURE, DEFRAUD OR DECEIVE ANY INSURANCE COMPANY, FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS SUBJECT TO PROSECUTION AND PUNISHMENT FOR INSURANCE FRAUD AS PROVIDED IN RSA 638:20.

**NOTICE TO NEW JERSEY APPLICANTS:**  ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO NEW MEXICO APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE

**EXHIBIT 1**

## U.S. SPECIALTY INSURANCE COMPANY

INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES.

**NOTICE TO NEW YORK APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

**NOTICE TO OHIO APPLICANTS:** ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

**NOTICE TO OKLAHOMA APPLICANTS:** WARNING: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES AN CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

**NOTICE TO OREGON APPLICANTS:** ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT MAY BE GUILTY OF INSURANCE FRAUD.

**NOTICE TO PENNSYLVANIA APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO TENNESSEE, VIRGINIA & WASHINGTON APPLICANTS:** IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

**NOTICE TO VERMONT APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE STATEMENT IN AN APPLICATION FOR INSURANCE MAY BE GUILTY OF A CRIMINAL OFFENSE AND SUBJECT TO PENALTIES UNDER STATE LAW.

Note: This **Application** must be signed by the President or CEO of the **Applicant** acting as the authorized agent of the persons and entity(ies) proposed for this insurance.

Signature of **Applicant's** President or CEO _____  Date  2/12/16

Name (printed): Andrew Poiruh

Title: CEO

**EXHIBIT 1**

# Board of Directors and Affiliated Shareholders
### as of December 11, 2015

**Director: Johan Symmons**
Affiliated Shareholder
     International SIF Sicav SA

**Director: Joel Dobberpuhl**
Affiliated Shareholders
     Jetstream Ventures LLC
     Peter Hawkins Dobberpuhl Foundation

**Director: Rob Davenport**
Affiliated Shareholder
     Brightpath Capital Partners, LP

**Director, Shareholder and Employee: Alexander Guettel**
Affiliated Shareholders
     Guettel, Mary R. 1998 Trust by Mary R. Guettel, Trustee
     Guettel, Alexander (Joshua S. Rubenstein, as Trustee of the Accumulation Trust
         U/W/O Richard Rodgers F/B/O Alexander Guettel)
     Richard Rodgers 2014 Family Trust
     Alexander Guettel Beneficiary Accumulation Trust

**Director: Reuben Munger**
Affiliated Shareholder
     Vision Ridge Capital, LLC

**Director: Peter Shannon**
Affiliated Shareholder
     Firelake Investors Fund II, LP
     Firelake Strategic Technology Fund II, LP

**Director, Shareholder and Employee: Birch, Andrew**

**EXHIBIT 1**

Internal - Confidential

| Subsidiary Name | |
| --- | --- |
| Sungevity Arch, LLC | part of our various tax equity funds/transactions, which hold certain customer agreements and own projects that we have retained (and not sold to partners like Sunrun) |
| Sungevity Cardinal LLC | part of our various tax equity funds/transactions, which hold certain customer agreements and own projects that we have retained (and not sold to partners like Sunrun) |
| Sungevity Citi Lessor, LLC | part of our various tax equity funds/transactions, which hold certain customer agreements and own projects that we have retained (and not sold to partners like Sunrun) |
| Sungevity Development, LLC | party to certain customer-facing agreements, such as leases and performance guarantees, for projects sold to our tax equity funds or partners such as Sunrun |
| Sungevity Financial Services, LLC | part of our various tax equity funds/transactions, which hold certain customer agreements and own projects that we have retained (and not sold to partners like Sunrun) |
| Sungevity Gotham, LLC | part of our various tax equity funds/transactions, which hold certain customer agreements and own projects that we have retained (and not sold to partners like Sunrun) |
| Sungevity Greenwich, LLC | part of our various tax equity funds/transactions, which hold certain customer agreements and own projects that we have retained (and not sold to partners like Sunrun) |
| Sungevity Greenwich Lessor, LLC | part of our various tax equity funds/transactions, which hold certain customer agreements and own projects that we have retained (and not sold to partners like Sunrun) |
| Sungevity International Holdings LLC | international holding company that may soon be our international operating company. |
| Sungevity SD, LLC | holds a limited number of projects that are not in tax equity funds or sold |
| Sungevity Short Hills 2012, LLC | holding company that holds the interests of the managing members in our tax equity subsidiaries |
| Sungevity USB Residential 2010, LLC | part of our various tax equity funds/transactions, which hold certain customer agreements and own projects that we have retained (and not sold to partners like Sunrun) |
| Sungevity USB Residential 2011, LLC | part of our various tax equity funds/transactions, which hold certain customer agreements and own projects that we have retained (and not sold to partners like Sunrun) |
| Sungevity USB Residential 2012, LLC | part of our various tax equity funds/transactions, which hold certain customer agreements and own projects that we have retained (and not sold to partners like Sunrun) |

**EXHIBIT 1**

Sungevity USB Residential Lessee 2010, LLC  part of our various tax equity funds/transactions, which hold certain customer agreements and own projects that we have retained (and not sold to partners like Sunrun)

Sungevity USB Residential Lessee 2011, LLC  part of our various tax equity funds/transactions, which hold certain customer agreements and own projects that we have retained (and not sold to partners like Sunrun)

Sungevity USB Residential Lessee 2012, LLC  part of our various tax equity funds/transactions, which hold certain customer agreements and own projects that we have retained (and not sold to partners like Sunrun)

**EXHIBIT 1**

Sungevity Feb 2016 Overview Meyers EE Decision

Nicholas Meyers was terminated on 7/23/15 for misconduct related to the falsification of company records. On 8/24/15 Sungevity received a demand letter from an attorney representing Meyers, alleging wage and hour violations, and seeking penalties for missed overtime, meal and rest periods, as well as waiting time penalties. The attorney for Meyers initiallly demanded a settlement amount of $116,009.10.

Through private negotiations led by Littler Mendelson representing Sungevity, a settlement was reached on 1/21/16 in the amount of $45,000 representing  a) Fifteen Thousand  Dollars ($15,000.00), less required withholdings and deductions, payable to Meyers for the alleged wage portion of his claim, including meal and rest break premiums and unpaid overtime; (b) Thirty Thousand  Dollars ($30,000.00), payable to Meyers for alleged claims for non-economic damages, interest and penalties under the Labor Code, and attorney's fees and costs

**EXHIBIT 1**



**U.S. Specialty Insurance Company**
**Houston Casualty Company**
**HCC Specialty Insurance Company**

HCC Global
8 Forest Park Drive, Farmington, Connecticut 06032
main 800 674 1900   facsimile 800 676 1737

### RENEWAL APPLICATION FOR
### FIDUCIARY LIABILITY INSURANCE

NOTICE: THE POLICY FOR WHICH THIS APPLICATION IS MADE IS A CLAIMS-MADE INSURANCE POLICY WHICH, EXCEPT AS OTHERWISE SET FORTH IN THE POLICY, WILL APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF PURCHASED, THE DISCOVERY PERIOD. THE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES, VOLUNTARY COMPLIANCE PROGRAMS COSTS AND SETTLEMENTS WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF DEFENSE COSTS. DEFENSE COSTS WILL BE APPLIED AGAINST THE APPLICABLE RETENTION. THE INSURER WILL HAVE NO DUTY UNDER THE POLICY TO DEFEND ANY INSURED.

1.  (a) Name of Applicant: _Sungevity, Inc._
    (Whenever used in this Application the term Applicant shall mean the Named Organization and all Subsidiaries).

    (b) Principal Address: _66 Franklin Street Suite 310_
    _Oakland CA 94607_

    (c) Risk Manager: _Susan Hollingshead_

    (d) Nature of business: _residential solar system sales, financing_
    _& installation_

    (e) Does the Applicant have tax-exempt status under the Internal Revenue Code?  ☐ Yes ☑ No

    (f) Is the Applicant a subsidiary of a foreign parent?  ☐ Yes ☑ No

    (g) Is the Applicant a general partner in any limited or general partnership or joint venture?
    ☑ Yes ☐ No (If "Yes", please provide details by attachment).

2.  Please provide the following information regarding each Plan with respect to which coverage is sought (list any additional Plans by attachment):

| Full name of Plan | Type of Plan | # of Plan participants | Total Plan assets | % of Plan assets in employer stock (if none, N/A) |
|---|---|---|---|---|
| Sungevity 401k | DC | 368 | $5,300,000.⁵⁰ | 0% |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

\* Health and Welfare Plan: W        Defined Benefit Plan: DB        Defined Contribution: DC
Employee Stock Ownership: ESOP    Excess Benefit or Top Hat Plan: EB
Other: please describe

**EXHIBIT 1**

3.  Are any of the **Plans** identified in response to question 2 above new since inception of the **Applicant's** current policy?  ☐ Yes  ☑ No (If "Yes", identify each new **Plan** by attachment).

4.  **Plan** Operations, Compliance and Oversight:

    (a)  Since the inception of the **Applicant's** current policy, has any **Plan** identified in response to question 2 above not been in compliance with applicable standards of eligibility, participation, vesting, blackout notification requirements, funding and other provisions of ERISA?  ☐ Yes  ☑ No  (If "Yes", please provide details by attachment).

    (b)  Since the inception of the **Applicant's** current policy, has an actuary certified that each **Plan** identified in response to question 2 above is adequately funded?  ☑ Yes  ☐ No  (If "No", please provide details by attachment).

    (c)  Does the **Applicant** delegate authority for the management, control and/or investment of any **Plan** assets to any outside consultants?  ☐ Yes  ☑ No (If "Yes", please provide the following information with respect to each such **Plan** identified in response to question 2 above):

| | Name and Address | Years Employed |
|---|---|---|
| Investment Advisor | | |
| Actuary | | |
| Legal Counsel | | |
| CPA | | |
| Administrator | | |
| Other (describe) | | |

    (d)  How often do the persons responsible for **Plan Administration** and supervision meet to conduct **Plan** business, review performance, ensure compliance with ERISA and review claims under the **Plans**?
    _Quarterly_

    (e)  Does the **Applicant** handle any decisions regarding the investment of **Plan** assets in-house?
    ☐ Yes  ☑ No (If "Yes", please provide details by attachment).

    (f)  Has any **Plan** identified in response to question 2 above held any investment in hedge funds, real estate, loans, leases or debt obligations that are in default or classified as uncollectible, or investments with a guaranteed return (e.g. guaranteed investment contracts, guaranteed annuity contract, bank investment contracts)?  ☐ Yes  ☑ No (If "Yes", please provide details by attachment).

    (g)  Are there any restriction on the disposition of any employer stock held in any **Plan** identified in response to question 2 above?  ☐ Yes ☐ No  ☑ N/A (If "Yes", please provide details by attachment).

    (h)  Are any **Plan** benefits provided by insurance?  ☐ Yes  ☑ No  (If "Yes", please provide details by attachment).

5.  **Plan** History and Changes:

    (a)  Since the inception of the **Applicant's** current policy, has the **Applicant** amended or terminated any **Plan**, or does the **Applicant** contemplate doing so within the next 12 months?
    ☐ Yes  ☑ No (If "Yes", please provide details by attachment).

    (b)  Since the inception of the **Applicant's** current policy, has any **Plan** been the subject of any investigation by the Department of Labor, the Internal Revenue Service or similar agency, whether foreign or domestic?
    ☐ Yes  ☑ No  (If "Yes", please provide details by attachment).

    (c)  Since the inception of the **Applicant's** current policy, has any **Plan** identified in response to question 2 above been amended in a way that resulted or will result in a reduction of benefits (including but not limited

**EXHIBIT 1**

to any increase in participants' share of costs), or are any such amendments anticipated within the next 12 months?  ☐ Yes ☑ No  (If "Yes", please provide details by attachment).

(d) Since the inception of the **Applicant's** current policy, has any **Plan** identified in response to question 2 above filed for an exemption to a prohibited transaction? ☐ Yes ☑ No  (If "Yes", please provide details by attachment).

6.  Claim and Enforcement History

   Since the Inception of the **Applicant's** current policy:

(a) has any **Applicant, Plan** or person or entity proposed for this insurance been accused or found guilty of any criminal act or been accused of, found guilty of or held liable for any breach of fiduciary duty, violation of ERISA or any similar state, local or foreign law?  ☐ Yes ☑ No  (If "Yes", please provide details by attachment).

(b) have any claims that would fall within the scope of the proposed insurance been made against any person or entity, including any **Plan**, proposed for this insurance?  ☐ Yes ☑ No (If "Yes", please provide details by attachment).

(c) has any **Plan** paid any assessment of fees, fines or penalties under any Voluntary Compliance Program? ☐ Yes ☑ No (If "Yes", please provide details by attachment).

**Attach:**
- **Applicant's** most recent audited financial statements, with any notes and schedules.
- Copies of most recent form 5500s for each **Plan** (other than welfare benefit plans).
- Audited financial statements for the five largest **Plans** identified in response to question 2 above.
- **Plan** descriptions and audited financial statements for all non-qualified **Plans**, if any, identified in response to question 3 above.
- Schedule of **Plan** trustees

FOR PURPOSES OF THIS APPLICATION, THE UNDERSIGNED AUTHORIZED AGENT OF ALL PERSONS AND ENTITIES PROPOSED FOR THIS INSURANCE DECLARES THAT, TO THE BEST OF HIS/HER KNOWLEDGE AND BELIEF, AFTER REASONABLE INQUIRY, THE STATEMENTS CONTAINED HEREIN, AND IN ANY ATTACHMENTS HERETO, ARE TRUE AND COMPLETE.  THE INSURER IS AUTHORIZED TO MAKE ANY INQUIRY IN CONNECTION WITH THIS APPLICATION.  ACCEPTING THIS APPLICATION DOES NOT BIND THE INSURER TO COMPLETE THE INSURANCE.

THE INFORMATION CONTAINED IN AND SUBMITTED WITH THIS APPLICATION IS ON FILE WITH THE INSURER AND IS CONSIDERED TO BE PHYSICALLY ATTACHED TO AND PART OF THIS APPLICATION. THE APPLICATION, INCLUDING ALL ATTACHMENTS THERETO, WILL BE CONSIDERED TO BE PHYSICALLY ATTACHED TO ANY POLICY ISSUED ON THE BASIS OF THIS APPLICATION AND WILL BECOME PART OF ANY SUCH POLICY.  THE INSURER WILL HAVE RELIED UPON THIS APPLICATION, INCLUDING ALL ATTACHMENTS THERETO, IN ISSUING ANY SUCH POLICY.

IF ANY INFORMATION IN THIS APPLICATION, INCLUDING ANY ATTACHMENT THERETO, CHANGES MATERIALLY BEFORE THE EFFECTIVE DATE OF THE POLICY FOR WHICH APPLICATION IS MADE, THE APPLICANT MUST NOTIFY THE INSURER, AND THE INSURER MAY MODIFY OR WITHDRAW ANY QUOTATION.

NOTICE TO ALABAMA APPLICANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO RESTITUTION, FINES, OR CONFINEMENT IN PRISON, OR ANY COMBINATION THEREOF.

**EXHIBIT 1**

**NOTICE TO ALASKA APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE AN INSURANCE COMPANY FILES A CLAIM CONTAINING FALSE, INCOMPLETE OR MISLEADING INFORMATION MAY BE PROSECUTED UNDER STATE LAW.

**NOTICE TO ARIZONA APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO ARKANSAS, DISTRICT OF COLUMBIA, LOUISIANA, RHODE ISLAND & WEST VIRGINIA APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**NOTICE TO CALIFORNIA & TEXAS APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR THE PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE PRISON.

**NOTICE TO COLORADO APPLICANTS:** IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

**NOTICE TO DELAWARE APPLICANTS:** ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

**NOTICE TO FLORIDA APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

**NOTICE TO IDAHO APPLICANTS:** ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO DEFRAUD OR DECEIVE ANY INSURANCE COMPANY, FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

**NOTICE TO INDIANA APPLICANTS:** A PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD AN INSURER FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION COMMITS A FELONY.

**NOTICE TO KANSAS APPLICANTS:** ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO DEFRAUD, PRESENTS, CAUSES TO BE PRESENTED OR PREPARES WITH KNOWLEDGE OR BELIEF THAT IT WILL BE PRESENTED TO OR BY AN INSURER, PURPORTED INSURER, BROKER OR ANY AGENT THEREOF, ANY WRITTEN, ELECTRONIC OR RECORDED STATEMENT AS PART OF, OR IN SUPPORT OF, AN APPLICATION FOR THE ISSUANCE OF, OR THE RATING OF AN INSURANCE POLICY FOR PERSONAL OR COMMERCIAL INSURANCE, OR A CLAIM FOR PAYMENT OR OTHER BENEFIT PURSUANT TO AN INSURANCE POLICY FOR COMMERCIAL OR PERSONAL INSURANCE WHICH SUCH PERSON KNOWS TO CONTAIN MATERIALLY FALSE INFORMATION CONCERNING ANY FACT MATERIAL THERETO; OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO KENTUCKY APPLICANTS**:  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

**NOTICE TO MAINE APPLICANTS**:  IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY.  PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR DENIAL OF INSURANCE BENEFITS.

**NOTICE TO MARYLAND APPLICANTS**:  ANY PERSON WHO KNOWINGLY OR WILLFULLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY OR WILLFULLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**NOTICE TO MINNESOTA APPLICANTS**:  A PERSON WHO FILES A CLAIM WITH INTENT TO DEFRAUD OR HELPS COMMIT A FRAUD AGAINST AN INSURER IS GUILTY OF A CRIME.

**NOTICE TO NEW HAMPSHIRE APPLICANTS**:  ANY PERSON WHO, WITH A PURPOSE TO INJURE, DEFRAUD OR DECEIVE ANY INSURANCE COMPANY, FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS SUBJECT TO PROSECUTION AND PUNISHMENT FOR INSURANCE FRAUD AS PROVIDED IN RSA 638:20.

**NOTICE TO NEW JERSEY APPLICANTS**:  ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO NEW MEXICO APPLICANTS**:  ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES.

**NOTICE TO NEW YORK APPLICANTS**:  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

**NOTICE TO OHIO APPLICANTS:** ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

**NOTICE TO OKLAHOMA APPLICANTS:**  WARNING: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES AN CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

**NOTICE TO OREGON APPLICANTS:**  ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT MAY BE GUILTY OF INSURANCE FRAUD.

**NOTICE TO PENNSYLVANIA APPLICANTS:**  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

**EXHIBIT 1**

**NOTICE TO TENNESSEE, VIRGINIA & WASHINGTON APPLICANTS:**  IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY.  PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

**NOTICE TO VERMONT APPLICANTS:**  ANY PERSON WHO KNOWINGLY PRESENTS A FALSE STATEMENT IN AN APPLICATION FOR INSURANCE MAY BE GUILTY OF A CRIMINAL OFFENSE AND SUBJECT TO PENALTIES UNDER STATE LAW.

Applicant Signature: _____

Print Name: _Susan M. Hollingshead_

Title: _Chief Administrative Officer_

Date: _2/12/16_

**(Must be signed and dated by the Chairman of the Board of Directors, President, or Chief Executive Officer)**

Broker (Company): _____

Broker (Individual): _____

Broker License#: _____

Address: _____

_____

Phone: _____

---

**Farmington**
8 Forest Park Drive
Farmington, CT 06032
United States of America
Tel: +1(860) 674.1900
Fax: +1(860) 676.1737

**Jersey City**
Newport Financial Center
111 Town Square Place, Ste. 1201
Jersey City, NJ 07310
United States of America
Tel: +1(201) 216.1136
Fax: +1(201) 216.1225

**Houston**
7500 San Felipe
Suite 600
Houston, TX 77063
United States of America
Tel: +1(713) 914.8034
Fax: +1(713) 914.8035

**EXHIBIT 1**

# NEW HAMPSHIRE ADDENDUM
## TO
## APPLICATION FOR FIDUCIARY LIABILITY INSURANCE

Pursuant to New Hampshire RSA 402:82 II, this Application must be signed by both the Applicant and the Broker/Producer.  NOTE:  A stamped signature is <u>not</u> acceptable.

**Broker/Producer Signature:** _____

Print Name: _____

Date: _____

**EXHIBIT 1**